*1399 Opinion
KENNARD, J.*
During a marriage the husband used community property funds to purchase an insurance policy on his life, naming his wife as the policy’s only owner and beneficiary. Upon dissolution of the marriage, is the life insurance policy community property or the wife’s separate property? We conclude that, unless the statutory transmutation requirements have been met, the life insurance policy is community property. Because the Court of Appeal reached a different conclusion, we reverse that court’s judgment.
I
After a 20-year marriage, Frankie Valli (husband) and Randy Valli (wife) separated in September 2004. Their three children were minors at the time of separation but have since become adults. Before the separation, in March 2003, husband used community property funds from a joint bank account to buy a $3.75 million insurance policy on his life, naming wife as the sole owner and beneficiary. Until the parties separated, the policy premiums were likewise paid with community property funds from a joint bank account.
At the marital dissolution proceeding, wife testified that she and husband, while he was in the hospital for “heart problems,” had talked about buying a life insurance policy. Wife said that husband and their business manager, Barry Siegel, told her that they would make her the policy’s owner. Husband testified that he “put everything in [wife’s] name, figuring she would take care and give to the kids what they might have coming” and that he had no plans to separate from wife when he bought the policy.
The trial court ruled that the insurance policy was community property because it was acquired during marriage with community funds. The court awarded the policy to husband and ordered him to buy out wife’s interest in the policy by paying her $182,500, representing one-half of the policy’s cash value at the time of trial. The Court of Appeal reversed, holding that the insurance policy was wife’s separate property.
n
In a marital dissolution proceeding, a court’s characterization of the parties’ property—as community property or separate property—determines the division of the property between the spouses. (In re Marriage of Benson (2005) 36 Cal.4th 1096, 1102 [32 Cal.Rptr.3d 471, 116 P.3d 1152]; In re *1400 Marriage of Haines (1995) 33 Cal.App.4th 277, 291 [39 Cal.Rptr.2d 673].) Property that a spouse acquired before the marriage is that spouse’s separate property. (Fam. Code, § 770, subd. (a)(1).) Property that a spouse acquired during the marriage is community property (id., § 760) unless it is (1) traceable to a separate property source (In re Marriage of Lucas (1980) 27 Cal.3d 808, 815 [166 Cal.Rptr. 853, 614 P.2d 285]; In re Marriage of Mix (1975) 14 Cal.3d 604, 610, 612 [122 Cal.Rptr. 79, 536 P.2d 479]), (2) acquired by gift or bequest (Fam. Code, § 770, subd. (a)(2)), or (3) earned or accumulated while the spouses are living separate and apart (id., § 771, subd. (a)). A spouse’s claim that property acquired during a marriage is separate property must be proven by a preponderance of the evidence. (In re Marriage of Ettefagh (2007) 150 Cal.App.4th 1578, 1591 [59 Cal.Rptr.3d 419]; see Estate of Murphy (1976) 15 Cal.3d 907, 917 [126 Cal.Rptr. 820, 544 P.2d 956] [a spouse asserting that property acquired by purchase during a marriage is separate property must prove that the property is not community].)
Here, as mentioned earlier, husband during the marriage took out a $3.75 million insurance policy on his life, designating wife as the policy’s sole owner and beneficiary. The parties do not dispute that the policy was purchased with community property funds from a joint bank account. What they do dispute is the policy’s characterization. Husband argues that the policy is community property because it was purchased during the marriage with community funds. (See Tyre v. Aetna Life Ins. Co. (1960) 54 Cal.2d 399, 402 [6 Cal.Rptr. 13, 353 P.2d 725] [“A policy of insurance on the husband’s life is community property when the premiums have been paid with community funds.”]; Grimm v. Grimm (1945) 26 Cal.2d 173, 175 [157 P.2d 841] [same].) Wife argues that the policy is her separate property because husband arranged for the policy to be put solely in her name, thereby changing the policy’s character from community property to separate property.
Married persons may, through a transfer or an agreement, transmute—that is, change—the character of property from community to separate or from separate to community. (Fam. Code, § 850.) A transmutation of property, however, “is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.” (Id., § 852, subd. (a).) To satisfy the requirement of an “express declaration,” a writing signed by the adversely affected spouse must expressly state that the character or ownership of the property at issue is being changed. (Estate of MacDonald (1990) 51 Cal.3d 262, 272 [272 Cal.Rptr. 153, 794 P.2d 911].) The “express declaration” requirement “does not apply to a gift between the spouses of clothing, wearing apparel, jewelry, or other tangible articles of a personal nature that is used solely or principally by the spouse to whom the gift is *1401 made and that is not substantial in value taking into account the circumstances of the marriage.” (Fam. Code, § 852, subd. (c), italics added.)
Here, husband contends that because the express written declaration requirement was not satisfied, his act of placing the life insurance policy in wife’s name did not transmute the policy, which was purchased during the marriage with community funds, into a separate property asset of wife. Wife argues that the transmutation requirements apply only to transactions between spouses, and not to one spouse’s acquisition of property from a third party. Here, she argues, the only transaction was between husband and the insurance company issuing the policy. Because there was no interspousal transaction, in her view the transmutation requirements do not apply.
The Legislature adopted the statutory transmutation requirements in 1984 upon a recommendation of the California Law Revision Commission. (Estate of MacDonald, supra, 51 Cal.3d at p. 268.) In its report to the Legislature, the commission observed that under then existing law it was “ ‘quite easy for spouses to transmute both real and personal property’ ” because a transmutation could be proved by evidence of an oral agreement between the spouses or by “ ‘implications from the conduct of the spouses.’ ” (Id. at p. 269.) This “ ‘rule of easy transmutation . . . generated extensive litigation in dissolution proceedings’ ” where it encouraged spouses “ ‘to transform a passing comment into an “agreement” or even to commit perjury by manufacturing an oral or implied transmutation.’ ” {Ibid.) As this court has concluded, therefore, in adopting the statutory transmutation requirements the Legislature intended “to remedy problems which arose when courts found transmutations on the basis of evidence the Legislature considered unreliable.” (Ibid.; accord, In re Marriage of Benson, supra, 36 Cal.4th at p. 1106 [the transmutation statute “blocks efforts to transmute marital property based on evidence—oral, behavioral, or documentary—that is easily manipulated and unreliable”].)
The distinction that wife here urges us to draw between interspousal property transactions (which are subject to the transmutation statutes) and property acquisitions from third parties (which would not be subject to those statutes even when it has the claimed effect of changing community property funds to a separate property asset or vice versa) bears no relation to these legislative concerns, and it produces arbitrary and irrational results that the Legislature could not have intended. A few hypothetical examples illustrate this point.
Suppose a husband, shopping at a jewelry store, uses community funds to buy a particularly expensive diamond necklace that is “substantial in value taking into account the circumstances of the marriage” (Fam. Code, § 852, *1402 subd. (c)), intending to give it to his wife a few days later as a birthday present. Because of the particular necklace’s value in comparison to the particular couple’s financial situation, the gift exception does not apply. Under the analysis urged here by wife, the transmutation statutes would not apply to the necklace’s purchase because it was a third party transaction with the jewelry store. But because the husband used community funds to buy the necklace and did not immediately transfer title or possession to the wife, the purchase itself did not cause any transmutation, and the necklace would be community property at least until the wife’s birthday. On that day, the husband’s act of giving the necklace to the wife, together with the wife’s act of accepting the husband’s gift, would be an interspousal transaction to which the transmutation requirements would apply even under the analysis urged here by wife. Absent an express written declaration, therefore, the necklace would remain community property even after the wife received it as a birthday gift from the husband.
Next, suppose that instead of buying the necklace for his wife before her birthday, the husband, on his wife’s birthday, promises to buy a diamond necklace of her choice. They go to a jewelry store, the wife selects a particular necklace that is “substantial in value taking into account the circumstances of the marriage” (Fam. Code, § 852, subd. (c)), the husband pays for it with community funds, and they leave the store with the wife wearing the new jewelry. In this scenario, there would appear to be a single transaction, the jewelry store purchase. Under the analysis urged here by wife, the transmutation statutes would not apply to that single transaction because it was a purchase from a third party, and thus no “express declaration” would be required to transmute the community property funds to the wife’s separate property asset.
For purposes of the transmutation statutes, it is difficult to conceive any justification for treating these two hypothetical scenarios differently. Under either scenario, the husband could present evidence, in a later dissolution proceeding, that he and the wife had discussed the advantages of diamonds as an investment, that they had orally agreed the necklace would eventually be passed on to their daughter, and that it was therefore understood between them that although this very expensive necklace would be the wife’s to wear on special occasions, it would remain a community asset. To rebut the husband’s evidence, the wife could deny having any conversation with the husband about investing in diamonds or purchasing jewelry as a family legacy, and she could present evidence of a contrary understanding that the necklace was to be hers alone. If the transmutation statutes did not apply, and in the absence of a writing expressly memorializing the parties’ understanding and intent, the trial court in the dissolution proceeding would be obliged to base its decision regarding the necklace’s character as community or separate property on a difficult assessment of the spouses’ credibility as *1403 witnesses. (See, e.g., In re Marriage of Steinberger (2001) 91 Cal.App.4th 1449, 1456 [111 Cal.Rptr.2d 521].) Putting the trial court in such a position is what the transmutation statutes were enacted to prevent.
One could argue, perhaps, that the second hypothetical scenario, like the first, can and should be viewed as two transactions—a purchase from a third party and an interspousal giving of a gift—that are legally distinguishable even though they occurred simultaneously. Adopting that approach, one would conclude that the interspousal gift transaction was subject to the transmutation statutes in the second scenario just as in the first. But if the second jewelry gift scenario can be parsed into two simultaneous but legally separable transactions, then so here could husband’s purchase of the life insurance policy, with title taken in wife’s name. If, as wife here claims, the effect of the policy purchase with money from a joint bank account was to convert community property funds into her separate property asset, then the purchase necessarily involved a gift from husband to wife because wife has never maintained that she gave husband anything in exchange for his community interest in the purchase money. If the policy was a gift by husband to wife, then the giving and receiving of that gift was an interspousal transaction to which the transmutation statutes apply. (Cf. Burkle v. Burkle (2006) 141 Cal.App.4th 1029, 1036, fn. 5 [46 Cal.Rptr.3d 562] [the elements of a gift include “ ‘delivery, either actual or symbolical’ ” and “ ‘acceptance, actual or imputed’ ”].)
This point can be further illustrated by another hypothetical. Suppose in this case husband had initially taken title to the insurance policy jointly in his and wife’s names, and then on a later date, after receiving estate planning advice and discussing the matter with wife, he had instructed the insurer to transfer the title to wife’s name alone. In that situation, where wife acquired sole title to the policy some time after the policy’s purchase, it appears that wife would concede the transmutation statutes’ applicability to any claim by her, in a marital dissolution proceeding, that the change in title changed the character of the policy from community to separate property.[1] Therefore, under the analysis urged here by wife, whether the transmutation statutes apply to the insurance policy depends upon the entirely fortuitous circumstance of when she acquired sole title to the insurance policy, whether during the purchase or after the purchase of the policy. We are unwilling to conclude *1404 the Legislature intended application of the transmutation statutes to turn on such fortuitous distinctions.
We recognize that some court decisions have stated that a transmutation requires an interspousal transaction and that one spouse’s acquisition of an asset from a third party is therefore exempt from the statutory transmutation restrictions. Those decisions are unpersuasive, however.
The notion that third party transactions cannot be transmutations may be traced to the Court of Appeal’s 1995 decision in In re Marriage of Haines, supra, 33 Cal.App.4th 277. There, the Court of Appeal said that a transmutation is “an interspousal transaction or agreement which works a change in the character of the property.” (Id. at p. 293.) Referring to the wife’s signing of a quitclaim deed conveying the family residence to the husband during the marriage, the court concluded that this was a transmutation subject to the statutory express declaration requirement. (Ibid.) The court did not consider whether any other transaction was a transmutation, and in particular it did not consider whether one spouse’s purchase of property from a third party could be a transmutation.
The statement that a transmutation is “an interspousal transaction or agreement” (In re Marriage of Haines, supra, 33 Cal.App.4th at p. 293) was later repeated in the Court of Appeal decisions in In re Marriage of Campbell (1999) 74 Cal.App.4th 1058, 1062 [88 Cal.Rptr.2d 580] and In re Marriage of Cross (2001) 94 Cal.App.4th 1143, 1147 [114 Cal.Rptr.2d 839] (Cross). But neither decision exempted a third party transaction from the transmutation requirements on the basis that it was not “interspousal.” Indeed, Cross said that the transmutation statutes address situations such as “where a wife buys a car for her husband with community property funds” (Cross, at pp. 1147-1148), a typical third party transaction. (See In re Marriage of Buie & Neighbors (2009) 179 Cal.App.4th 1170, 1173-1175 [102 Cal.Rptr.3d 387] [applying transmutation statutes to a husband’s purchase of a car for himself using the wife’s separate funds].) In 2005, this court likewise stated that a transmutation is an “interspousal transaction” (In re Marriage of Benson, supra, 36 Cal.4th 1096, 1100), but we did not consider whether this definition excludes spousal purchases during the marriage from third parties with community funds.
The first decision to hold that a spousal purchase from a third party during a marriage was not subject to the statutory transmutation requirements was In re Summers (9th Cir. 2003) 332 F.3d 1240, which was a bankruptcy proceeding rather than a marital dissolution proceeding. There, the federal appellate court was attempting to construe and apply California law “to determine whether the requirements of California’s transmutation statute . . . *1405 must be met when realty is transferred from a third party to spouses as joint tenants.” (Id. at p. 1242, citation omitted.) Relying on the statement by the California Court of Appeal in Cross that a transmutation is an “ ‘interspousal transaction or agreement’ ” (Cross, supra, 94 Cal.App.4th at p. 1147), the federal court concluded “that the transmutation requisites had no relevance to the conveyance in this case.” (In re Summers, at p. 1245.)
The year 2008 saw the first decision by a California state appellate court exempting from the transmutation requirements a spousal purchase from a third party: In re Marriage of Brooks & Robinson (2008) 169 Cal.App.4th 176 [86 Cal.Rptr.3d 624], In that marital dissolution proceeding, the husband and the wife disputed ownership of residential property they had purchased during the marriage, taking title solely in the wife’s name. (Id. at pp. 179-180.) On appeal, the husband argued, among other things, that the purchase of the property in the wife’s name alone was an attempted transmutation that was invalid because it did not comply with the statutory transmutation requirements. (Id. at p. 191.) Rejecting the husband’s argument, the Court of Appeal stated that there were “no facts suggesting a transmutation, valid or otherwise” because the property “was acquired in [the wife’s] name in a transaction with a third person, not through an interspousal transaction.” (Ibid.)
As mentioned earlier, these last two decisions (In re Summers, supra, 332 F.3d 1240; In re Marriage of Brooks & Robinson, supra, 169 Cal.App.4th 176) are not persuasive insofar as they purport to exempt from the transmutation requirements purchases made by one or both spouses from a third party during the marriage. Neither decision attempts to reconcile such an exemption with the legislative purposes in enacting those requirements, which was to reduce excessive litigation, introduction of unreliable evidence, and incentives for perjury in marital dissolution proceedings involving disputes regarding the characterization of property. Nor does either decision attempt to find a basis for the purported exemption in the language of the applicable transmutation statutes. Also, these decisions are inconsistent with three Court of Appeal decisions stating or holding that the transmutation requirements apply to one spouse’s purchases from a third party during the marriage. (In re Marriage of Buie & Neighbors, supra, 179 Cal.App.4th at pp. 1173-1175; Cross, supra, 94 Cal.App.4th at pp. 1147-1148; In re Marriage of Steinberger, supra, 91 Cal.App.4th at pp. 1463-1466.)
Our examination of the statutory language leads us to reject the purported exemption for spousal purchases from third parties. As we have said (ante, pp. 1400-1401), the transmutation statutes provide an express exemption for gifts of relatively inexpensive personal items. (Fam. Code, § 852, subd. (c).) Because spouses most often use community funds to purchase such gifts for each other, the statutory exemption necessarily implies *1406 that gifts not qualifying for the exemption (because they are “substantial in value” or because they are not items “of a personal nature”) are transmutations subject to the express declaration requirement, notwithstanding that a great many, if not most, involve purchases from third parties.[2]
As mentioned, the Court of Appeal here concluded that the transmutation statutes were “not relevant to this case” because the disputed life insurance policy “was acquired from a third party and not through an interspousal transaction.” After stating that conclusion, which we have determined to be erroneous, the court added: “Moreover, [wife] did not contend in the trial court, and does not contend on appeal, that the policy is her separate property through transmutation. Instead, [wife] contends that the policy is her separate property by operation of the form of title presumption.” Referring to Evidence Code section 662, which states that “[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title,” the Court of Appeal here asserted that “because the form of title presumption applies ... a transmutation theory is not involved.”
This reasoning by the Court of Appeal, we also conclude, is erroneous. We need not and do not decide here whether Evidence Code section 662’s form of title presumption ever applies in marital dissolution proceedings. Assuming for the sake of argument that the title presumption may sometimes apply, it does not apply when it conflicts with the transmutation statutes. (See In re Marriage of Barneson (1999) 69 Cal.App.4th 583, 593 [81 Cal.Rptr.2d 726].)
For the reasons we have given, the transmutation requirement of an express written declaration applies to wife’s claim, in this marital dissolution proceeding, that the life insurance policy husband purchased during the marriage with community funds is her separate property. Wife does not contend that she presented evidence at trial sufficient to satisfy the express declaration requirement, nor does our examination of the record disclose such evidence. Husband never expressly declared in writing that he gave up his community interest in the policy bought with community funds. Accordingly, we agree with the trial court’s characterization of the insurance policy as community property.
Because it concluded that the trial court had erred in characterizing the policy as community property, the Court of Appeal did not reach wife’s *1407 contentions “that the trial court erred in awarding ownership solely to [husband] at the policy’s cash value and that it abused its discretion in failing to maintain [wife] as a beneficiary on the policy as spousal support.” The Court of Appeal will address those contentions by wife on remand.
Disposition
The Court of Appeal’s judgment is reversed and the matter is remanded to that court for further proceedings consistent with this opinion.
Cantil-Sakauye, C. J., Baxter, J., Werdegar, J., Chin, J., Corrigan, J., and Liu, J., concurred.

Retired Associate Justice of the Supreme Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

 Wife here might argue that instructing the insurance company to transfer title after the policy’s purchase would be a third party transaction, like the initial purchase of the policy, because it could be done without her knowledge or participation. If we were to accept that argument, however, the result would be drawing an arbitrary distinction between assets as to which title transfers are always made through a third party, such as the insurance company here, and assets such as real property, as to which title transfers are normally made by deed or similar conveyances between the affected parties.

 Enactment of the transmutation statutes (Fam. Code, §§ 850-853) abrogated earlier judicial decisions that were inconsistent with the statutory requirements. One such decision was In re Marriage of Lucas, supra, 27 Cal.3d 808, in which this court upheld a trial court’s characterization of a motor home acquired during a marriage as entirely the wife’s separate property. From the husband’s failure to object when title was taken in the wife’s name alone the trial court inferred that the husband had made a gift to the wife of his interest in community funds used to purchase the motor home. (In re Marriage of Lucas, at pp. 817-818.) That portion of the decision is no longer good law.