Filed 9/29/15  Marriage of Yermian CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of ELENA and SHAWN YERMIAN. | D065036 |
| ELENA YERMIAN, | |
| Respondent, | (Super. Ct. No. DN170362) |
| v. | |
| SHAWN YERMIAN, | |
| Appellant. | |

APPEAL from a judgment and an order of the Superior Court of San Diego County, Patti C. Ratekin, Commissioner.  Affirmed.

Shawn Yermian, in pro. per., for Appellant.

No appearance for Respondent.

In this marital dissolution proceeding, we affirm the trial court's determination the ultimate proceeds of the sale of three pieces of real property acquired during the parties' marriage are petitioner Elena Yermian's (Elena) separate property.  The record shows that

all the proceeds from the sale of two of the properties were used in acquiring the third property and that appellant Shawn Yermian (Shawn) expressly and in writing disclaimed any interest in the third property in a transaction in which Elena in no sense took advantage of what the trial court found was her domineering and abusive husband.

We also reject Shawn's contention that the trial court abused its discretion in failing to award him attorney fees.

FACTUAL AND PROCEDURAL BACKGROUND

Elena and Shawn were married on January 18, 1997. Elena is a native of Russia and holds dual Russian and United States citizenship. During the course of the marriage, Shawn was a car salesman and also in the business of acquiring cars in the United States and selling them in Russia. They have one child, a daughter, born on November 8, 1998.

Prior to his marriage to Elena, Shawn fathered two older children and, at the time of trial in this proceeding, owed $50,000 in child support. Elena and Shawn separated on June 1, 2012.

During the course of the parties' marriage, Elena acquired title or ownership of three properties. First, she acquired title to a condominium in Russia in 1999. Although Shawn testified the condominium was payment for cars he had delivered before his marriage to Elena, Elena testified Shawn told her that the condominium was hers.

Elena eventually sold the condominium and the approximate $90,000 in proceeds of the sale was deposited in a credit union account in which Elena was the sole named owner.

Also in 1999, Elena acquired ownership of a home on Cambridge Way in

2

Carlsbad. Title to the home was in the name of Shawn's brother, Jackob Yermian. However, by way of a land sale contract, Jackob sold the Cambridge Way property to Elena. With respect to the Cambridge Way property, Shawn executed a grant deed, which in pertinent part states: "It is the express intent of the Grantor, being the spouse of the grantee, to convey all right, title and interest of the Grantor commonly or otherwise, in and to the herein described property to the grantee as his/her sole and separate property."

The Cambridge Way home was sold in 2009 and a third property, a home on Rock Ridge Road in Carlsbad, was acquired by way of a grant deed that named Elena as the sole grantee. In acquiring the Rock Ridge Road home, Elena used the $90,000 in proceeds from the sale of the Russian condominium and the $187,000 in proceeds from the sale of the Cambridge Way home; the balance of the purchase price was provided by Jackob in exchange for a $520,000 note and deed of trust in favor of Jackob.

With respect to acquisition of the Rock Ridge Road home, Shawn executed escrow instructions which directed that Shawn be eliminated from the purchase contract and that an interspousal transfer grant deed be prepared for recording. The instructions describe the interspousal transfer grant deed in the following terms: "This deed is to create the separate property of the Grantee and you are hereby authorized and instructed to record said deed on the instructions of the Grantee without collection and/or consideration for the account of the undersigned Grantor." The deed itself, which Shawn also executed, states: "This conveyance establishes sole and separate property of a spouse, R&T 11911.11."

3

At some point after the parties separated, the Rock Ridge Road home was sold and the proceeds of the sale were placed in a trust account, pending disposition by the trial court.

The trial court conducted a trial in which it considered Shawn's contention that none of the three properties—the Russian condominium, the home on Cambridge Way, and the home on Rock Ridge Road—had been Elena's separate property. After considering the documentary evidence and the testimony offered by the parties, the trial court determined that all three properties had been Elena's separate property. In reaching this conclusion, the court found that Shawn's testimony and his brother's testimony were not credible and that Elena had successfully overcome the presumption of Family Code section 760 that all property acquired during marriage is community property. In concluding Elena had not taken advantage of Shawn, the court found: Elena had been the victim of domestic violence and verbal abuse during the marriage, Shawn has a very strong personality; and, it was unlikely Shawn would have executed a deed in Elena's favor unless it was his decision to do so. The trial court also found that Shawn and Jackob "orchestrated all of the real estate transactions, [Elena] is timid and meek and mislead, and merely signed the documents put in front of her by [Shawn and Jackob]." Accordingly, the trial court awarded Elena as her separate property the funds held in the parties' trust account.

Both before and after trial, Shawn moved to be awarded attorney fees, and his motions were denied.

DISCUSSION

I

In his principal contention on appeal, Shawn argues the trial court erred in finding that Elena had overcome the community property presumption of Family Code section 760 with respect to the Russian condominium. He points out there is nothing in the record which shows that, with respect to the Russian condominium, he executed a writing that meets the transmutation requirements of Family Code section 852, subdivision (a). Although we agree with Shawn that the record here will not support a separate property finding with respect to the Russian condominium, any error the trial court committed with respect to the Russian condominium was harmless.

As we explain more fully, the trial court's separate finding that proceeds from the sale of the condominium were eventually used to acquire the Rock Ridge Road home, and our review of the record, which fully supports the trial court's finding that the Rock Ridge Road home was Elena's property, obviate any errors with respect to the Russian condominium. Although Shawn may not have given Elena the Russian condominium in the manner prescribed by our Family Code, the proceeds of that asset eventually were used to acquire the Rock Ridge Road home, and the record is very clear that Shawn gave up any interest in that asset and did so in a manner that meets the requirements of our transmutation statutes. The record is also abundantly clear that Elena in no sense took advantage of Shawn, who, the record shows physically and emotionally dominated Elena. Because the funds held in trust are composed of the proceeds of the sale of the Rock Ridge Road home, the trial court did not err in awarding it to Elena as her separate

5

property.

   A.  Transmutation Principles

   Family Code section 760 provides:  "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."  However, "[m]arried persons may, through a transfer or an agreement, transmute—that is, change—the character of property from community to separate or from separate to community.  (Fam. Code § 850.)  A transmutation of property, however, 'is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.'  (*Id.*, § 852, subd. (a).)  To satisfy the requirement of an 'express declaration,' a writing signed by the adversely affected spouse must expressly state that the character or ownership of the property at issue is being changed.  [Citation.]"  (*In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1400.)

   Because, while married, each spouse owes the other the duties of a fiduciary, with respect to any transaction between them, a benefitted spouse must not only offer proof of a writing that meets the requirements of Family Code section 852, subdivision (a), but he or she must also show that the transaction was not the result of any undue influence.  (*In re Marriage of Haines* (1995) 33 Cal.app.4th 277, 296.)  To meet this burden with respect to the transfer of Shawn's interests in the three properties, Elena was required to show that the transfers were "'freely and voluntarily made, and with a full knowledge of all the facts, and with a complete understanding of the effect of the transfer.'  [Citation.]" (*Ibid.*)

6

B. Analysis

The trial court's findings with respect to the Rock Ridge Road home are not subject to attack on appeal. The instructions Shawn filed and the deed he executed meet the writing requirements of Family Code section 852, subdivision (a): the documents expressly manifest Shawn's intent that the Rock Ridge Road home belong to Elena as her separate property. The record also supports the trial court's finding that Shawn was the dominant figure in the marriage and that, consequently, Elena did not exercise any undue influence on Shawn when he gave up any interest in the home.

The record is also clear that the funds held in trust, which were subject to the court's disposition, were the proceeds of the sale of the Rock Ridge Road home. By the same token, there is nothing in the record which suggests that prior to, after or because of the sale the parties intended the proceeds would once again become community property.

In sum, the trial court's finding as to the character of the Rock Ridge Road home is not subject to attack and all of the funds held in trust can be traced directly to Elena's separate property interest in the Rock Ridge Road home. Accordingly, we must affirm the judgment insofar as it awards to Elena the funds traced to her separate property. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

Admittedly, there is no express writing that supports the trial court's finding the Russian condominium was transmuted from community property to Elena's separate property. Its mere acquisition in Elena's name was not sufficient to make it her separate property. (See *In re Marriage of Valli*, *supra*, 58 Cal.4th at p. 1400.) However, because there is more than sufficient evidence that the later acquired Rock Ridge Road home was

7

transmuted, and the proceeds from the sale of that property are the subject of the trial court's judgment, Shawn was not prejudiced by the trial court's error with respect to the Russian condominium. In short, although the attempted transmutation of the Russian condominium was not effective, the later transmutation of the Rock Ridge Road home, including the funds used to acquire it, was valid.

II

Both before and after entry of the trial court's judgment awarding Elena the funds held in trust, Shawn filed motions for attorney fees. He argued that because, according to the financial disclosure statements he and Elena filed, she had access to more income and assets than he did, the trial court was obligated, by way of an award of fees, to assure him fair access to legal representation. (See Fam. Code, § 2030, subd. (b).) Elena filed consistent opposition in which she stated that she had contributed $15,000 towards Shawn's attorney fees and could not afford to make any further contribution to Shawn's attorney fees because, in part, of the attorney fees she had incurred in establishing her ownership of the funds held in trust, in litigation with Jackob with respect to the Rock Ridge Road home and her automobile, and because of Shawn's failure to pay child support. The record shows that, although prior to trial Shawn claimed he could not afford to retain counsel, at trial he was represented by an attorney. The trial court denied Shawn's motions.

We review the orders denying his request for fees for abuse of discretion. (*In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 630-631.) In light of Elena's declaration in which she set forth her inability to pay Shawn's attorney fees, his ability to

8

retain counsel for trial, notwithstanding his earlier contention that he could not afford trial counsel, the trial court did not abuse its discretion in denying his motions.

## DISPOSITION

The judgment and order of the trial court are affirmed.[1]

BENKE, J.

WE CONCUR:

McCONNELL, P. J.

McINTYRE, J.

---

[1] Elena has not appeared on appeal. In light of that fact and our disposition affirming the trial court's judgment and order, no award of costs is appropriate.