Filed 9/21/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of WISHTASB KUSHESH and FARIMA KUSHESH-KAVIANI. | |
| WISHTASB KUSHESH, Respondent, v. FARIMA KUSHESH-KAVIANI, Appellant. | G054936 (Super. Ct. No. 11D007966) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Franz E. Miller , Judge. Reversed and remanded with directions.

Alan S. Yockelson for Appellant.

No appearance for Respondent.

# I. INTRODUCTION

No published opinion to date has addressed whether an interspousal transfer grant deed (ITGD) meets the requirements for a transmutation of the character of marital property under Family Code section 852.[1]  The trial court concluded that the ITGD in this case did not contain the requisite language to effectuate a transmutation.

We are forced to disagree.  The standard ITGD expresses an intent to transfer a property interest from one spouse to another:  The constituent components of the word "interspousal" – literally *between* spouses – plus the words "transfer" and "grant," plus the usual statement about the grantee (or grantees) taking the property as either community or separate property, are all clear indicators the document constitutes an express declaration of an agreement to change the marital character of the property.  This document includes all those features.  We therefore reverse the trial court, and remand for further proceedings as to whether the beneficially-interested spouse in this case dispelled any presumption of undue influence (see § 721, subd. (b)) that might have arisen from the circumstances giving rise to this ITGD.

# II. FACTS

Farima Kushesh-Kaviani (Wife) and Wishtasb Kushesh (Husband) were married in January 2010.  The marriage did not last.  Their only child, Bahram, was born in April 2011, and the couple separated within two weeks of his birth.  Husband filed for dissolution in late August 2011.

During the marriage the couple lived in Husband's separate property condominium in Laguna Niguel.  But that condo is not the one at issue in this case.  This case concerns a condo called "unit 13k" by the parties three doors down from Husband's condo, acquired in May 2010 (about four months into the marriage).  The price of this condo was $265,000, and the down payment was $134,654.78.

---

[1]  All further statutory references are to the Family Code unless otherwise indicated.

2

The deed to the condo from the seller was made out to "Farima Kaviani, a Married Woman as Her Sole and Separate Property." At trial, Husband admitted both the loan application and loan itself were in Wife's name only. What's more, on May 21, 2010 Husband signed an ITGD. It provided, all in bold and all caps, "INTERSPOUSAL TRANSFER GRANT DEED," the ITGD recited: "FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, [¶] Vishtasb Kushesh, Spouse of Grantee Herein [¶] hereby GRANT(s) to: [¶] Farima Kaviani, a Married Woman as Her Sole and Separate Property [¶] the real property In the City or Laguna Niguel . . . [¶] Also known as . . . 13-K . . . ." Thus Wife claimed the condo should be confirmed to her as her separate property.

But Husband made his own claim to the condo as *his* separate property. And on that point he had one undisputed fact in his favor: All the money for the down payment had come from his separate bank account. As a backup against Wife's separate property claim, Husband could also point to the fact that the property had been acquired during the marriage, so he could argue it was also *presumptively* community property. (See § 760.)

Trial thus centered on the origin of the funds in Husband's account used for the down payment. Though the evidence was in conflict, the trial judge found that those funds came from Wife's father's monies in Iran and were transferred (Wife's attorney used the word "smuggled") into the United States via Kuwait. Concerned about inconsistencies in Husband's testimony, the trial court explicitly disregarded Husband's story that the funds were the proceeds of a partnership sale somewhere in the Middle East.

As to why those funds had been channeled through Husband's account, it was explained that Husband is a real estate investor by profession and Wife's father trusted Husband's expertise to handle the transaction. Also, as Wife testified, "cultural"

3

considerations had motivated her father to send the money to Husband.[2]  The idea was that unit 13k would be a place for her parents to live.

The trial judge analyzed the case this way:  First, unit 13k was acquired during the marriage, so it was presumed to be community property.   Second, "we don't worry about the title presumption" (alluding to section 662 of the Evidence Code[3]).  Third, the money to support the property, e.g., to "make the payments" on the mortgage, was "essentially" community funds.  Then the judge asked the question, "So what could rebut the presumption?"  He noted the existence of the ITGD, but agreed with Husband's attorney that there was an absence of "magic words" that would make it "clear that's it's a transmutation."[4]  Having found the ITGD "does not contain the requisite language" to qualify as an "express declaration" under section 852, the judge then said there was thus no need to address the question of undue influence.

The bottom line was a judgment that unit 13k was to be sold, with Wife receiving reimbursement for her separate property contribution "off the top" (see § 2640) and the parties splitting the balance.  From that judgment Wife has brought this appeal.[5]

## III.  DISCUSSION

Prior to the enactment of former Civil Code section 5110.730 in 1984, it was relatively "'easy'" for spouses to transmute community property into separate property and vice versa, simply by oral statement.  (See *Estate of MacDonald* (1990) 51

---

[2]  Wife's testimony on the issue was:  "Q.  And why did your father not wire the money to your account, if you had an account?  [¶]  A.  To be honest, it's just my father, he loved Wishtasb, and he trusted him.  He thought he knows and – I don't know.  It's a culture thing, I guess.  Like, men like to deal with men."

[3]  The "title presumption" is found in Evidence Code section 662.  It is a two-sentence statute:  "The owner of the legal title to property is presumed to be the owner of the full beneficial title.  This presumption may be rebutted only by clear and convincing proof."

[4]  Here is the trial judge's thinking on the ITGD issue:  "So what could rebut the presumption?  What about the transfer deed that Mr. Kushesh executed?  As Mr. Sarieh [Husband's trial attorney] points out correctly that absent language – affirmative language in the deed, the magic words if you will, making it clear that it's a transmutation.  So the deed's ineffective to overcome the presumption."

[5]  Husband has not filed a respondent's brief.  Such a failure is not treated as a de facto default, but rather the appellate court examines the appellant's brief in conjunction with the record to see if the appellant carries its burden of demonstrating prejudicial error at the trial level.  (E.g., *In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 834, fn. 2.)

4

Cal.3d 262, 268-269 (*MacDonald*), quoting Recommendation Relating to Marital Property Presumptions and Transmutations, 17 Cal.Law Revision Com.Rep. (1984) p. 213 (1984 Law Revision Commission Report).) The allure of easy transmutations had encouraged extensive litigation by allowing spouses to "'transform a passing comment into an 'agreement' or even to commit perjury by manufacturing an oral or implied transmutation.'" (*MacDonald, supra*, 51 Cal.3d at p. 269, quoting 1984 Law Revision Commission Report, *supra*, at p. 214.) With the passage of former Civil Code section 5110.730, the era of easy transmutation came to an end.

The statute was transmogrified into current Family Code section 852 in 1992 (see Stats. 1992, ch. 162, operative January 1, 1994), with literally no change in language. Section 852 sets forth these elements: (1) the transmutation must be made in writing; (2) the writing must contain an "express declaration" of transmutation; and (3) the writing must be "made, joined in, consented to, or accepted" by the adversely affected spouse.[6]

Most of the litigation involving section 852 has centered on the "express declaration" element. For example, in *MacDonald*, a deceased husband used community funds to open three IRA accounts, with the beneficiary of each account being a trust that left most of money to one of his three children from a prior marriage. Our Supreme Court held the opening of the accounts did not qualify as transmutations of community property to separate, even though the wife signed a writing to the effect she consented to them. The reason was there was nothing in documents that warned the wife her husband was changing the character of the property. (See *MacDonald, supra*, 51 Cal.3d at pp. 272-273.) "Obviously, the consent paragraphs contain no language which characterizes

---

[6] The elements of transmutation are all found in subdivision (a) of section 852. The remainder of the statute involves such collateral topics as effect on third parties, gifts of a personal nature like jewelry, and commingling. The exact text of subdivision (a) is: "A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected."

the property assertedly being transmuted, viz., the pension funds which had been deposited in the account.  It is not possible to tell from the face of the consent paragraphs, or even from the face of the adoption agreements as a whole, whether decedent was aware that the legal effect of her signature might be to alter the character or ownership of her interest in the pension funds.  There is certainly no language in the consent paragraphs, or the adoption agreements as a whole, expressly stating that decedent was effecting a change in the character or ownership of her interest.  Thus, we agree with the Court of Appeal that these writings fail to satisfy the 'express declaration' requirement of section 5110.730 (a)."  (*MacDonald, supra*, 51 Cal.3d at pp. 272-273.)

On the other hand, in *Estate of Bibb* (2001) 87 Cal.App.4th 461 (*Bibb*), a grant deed signed by the deceased husband transferring his separate property interest in an apartment to himself and his wife as joint tenants *was* effective to transmute his separate interest to community.  The *Bibb* court reasoned the word "'grant' is the historically operative word for transferring interests in real property" and thus the grant deed "validly transmuted" the apartment into joint tenancy.  (*Id.* at pp. 468-469, quoting *MacDonald, supra,* 51 Cal.3d at p. 273.)

The present case is more like *Bibb* than *MacDonald*.  For one thing, there were *fewer* magic words in *Bibb* than here.  Here, not only did the writing use the verb "grant" – the main point of *Bibb* – but the heading added the words "interspousal" – denoting a spouse-to-spouse transaction – and "transfer grant" – denoting that whoever was doing the granting was actually transferring something out of that person's estate.  Furthermore, this ITGD unequivocally stated the transfer was to make the property Wife's *as* her sole and separate property, inescapably pointing the reader in the direction of a change in the marital characterization of the property.

We therefore disagree with the trial court that the ITGD did not contain enough "magic words" to effectuate a transmutation.  (See *Bibb, supra*, 87 Cal.App.4th at p. 468 [noting that the words "I *give* to the account holder any interest I have" would be

6

enough under *MacDonald*].)  We do not believe any form of the word "transmute" is necessary.

From his remarks on the record, we think we know where the trial judge might have taken a wrong turn.  He appears to have read too much into *In re Marriage of Valli* (2014) 58 Cal.4th 1396 (*Valli*), as shown by his allusion to not worrying about the title presumption.

In *Valli*, a famous pop star took out a life insurance policy – the kind that accumulates a cash value.  He named his wife as the policy's only owner and beneficiary. (*Valli, supra*, 58 Cal.4th at p. 1399.)  In later dissolution proceedings the wife claimed the policy as her separate property based on it being solely in her name.  (*Id*. at p. 1400.) Most of the case centered on her argument that acquiring an asset from a third party is exempt from section 852, but the court rejected her request for an exemption.  It held the insurance policy did not satisfy section 852's requirements because it had no language indicating that any spouse-to-spouse transfer was taking place, despite its title ownership. That silence was not golden for the wife; it caused the high court to hold the policy was properly characterized as community.  (*Id*. at p. 1406.)

The *Valli* court's determination the insurance policy on Frankie Valli's life did not meet section 852's requirements was hardly a sunburst.  Having lost on her fairly esoteric third party argument, the wife had nothing left with which to argue the insurance policy effectuated a transmutation.  (See *Valli, supra*, 58 Cal.4th at p. 1406.)  But in the process of rejecting the wife's argument, the *Valli* court addressed the long-standing tension in California family law between the Family Code statutes and the title presumption set forth in the Evidence Code.[7]  The *Valli* majority held that the Family Code transmutation statutes take precedence over the Evidence Code title presumption,

---

[7]     For a brief history of the problems arising out of that tension see *In re Marriage of Koester* (1999) 73 Cal.App.4th 1032, 1034, discussing how the title presumption controlled the outcome of the case in *In re Marriage of Lucas* (1980) 27 Cal.3d 808 and the Legislature's adverse reaction to *Lucas*.

but did not go so far as to say the Evidence Code presumption might *never* apply in some other family law context. (*Id*. at p. 1406.) Justice Chin, joined by Justices Corrigan and Liu, would have eliminated the title presumption entirely in actions between spouses. (*Id*. at p. 1409 (conc. opn. of Chin, J.) [quoting amici brief that "'section 662 has no place in the characterization of property in actions between spouses.'"].)

We think the trial court here confused what *Valli* said about the title presumption with the elements of transmutation set out in section 852. It must be remembered that ITGD's have dual roles. One the one hand, they are *themselves* legal title to given property. They are, after all, deeds. Under Justice Chin's view (and we think under the *Valli* majority holding as well), the title presumption they convey is not effective as against section 852. So on that point the trial judge was quite correct not to "worry" about the title presumption insofar as the ITGD simply reflected the legal title of the property.

But ITGD's are not only title documents. They are also writings that expressly transfer spousal interests, in which spouses unequivocally make "interspousal" transfers to another, and do so, to harken back to *Bibb*, by way of the traditional word for a conveyance – a "grant." They don't just *reflect* title. They use a verb – "grant" – to *convey* title. And in that role ITGD's *do* meet section 852's transmutation requirements.

Of course, whenever there is a transfer from one spouse to another a rebuttable presumption of undue influence arises if the transaction gives one spouse an unfair advantage over the other. (See *In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 732, citing § 721.) The trial court did not address whether in this case Wife obtained an unfair advantage over Husband, or, if so, whether she rebutted the ensuing presumption. While the question of unfair advantage might arguably be one of law we could address now, the question of whether a spouse has rebutted a presumption of undue influence is unquestionably one of fact. (See *In re Marriage of Fossum* (2011)

8

192 Cal.App.4th 336, 344.) Rather than preempt the trial court on the unfair advantage issue, we exercise our discretion not to address it now given that the case must be returned to the trial court in the first instance anyway.

## IV. DISPOSITION

We conclude this ITGD was valid to transmute condo unit 13k from community property into Wife's separate property. We therefore reverse the judgment declaring the condo to be community property. The trial court must now reach the issue of whether the transaction gave Wife an unfair advantage over Husband and, if so, whether she rebutted the ensuing presumption of undue influence. Assuming those issues are decided in Wife's favor, our opinion is without prejudice to Husband to make whatever claims he might make for reimbursement of his half of any possible community contribution to unit 13k during this short marriage. Because that issue has not been briefed, we express no opinion on it.

Since Husband has not filed a respondent's brief, there is no need to allocate costs of appeal. Wife shall bear her own.


BEDSWORTH, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.


9