Filed 8/24/21

CERTIFIED FOR PARTIAL PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| Estate of BENNY M. WALL, Deceased. | C087730 |
| CINDY L. WALL, | (Super. Ct. No. STKPROPH20170000427) |
| Petitioner and Respondent, | |
| v. | |
| TIMOTHY WALL et al., | |
| Objectors and Appellants. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Lesley D. Holland, Judge. Affirmed.

Kroloff, Belcher, Smart, Perry & Christopherson, Allison Cherry Lafferty and Rebecca H. Sem for Objectors and Appellants.

Blewett & Allen, Inc., Shari L. Allen-Garibaldi and Jason Edmond Chong for Petitioner and Respondent.

_____

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of Parts II and III of the Discussion.

1

After her husband Benny Wall (decedent) died, petitioner Cindy Wall (wife) petitioned the probate court to determine that a home, titled in decedent's name, was community property. Decedent's children, objectors Timothy Wall and Tamara Nimmo (the children) objected unsuccessfully. On appeal, the children contend the trial court erred in (1) determining that the Family Code section 760 community property presumption prevailed over the Evidence Code section 662 form of title presumption; (2) failing to consider tracing evidence rebutting the community property presumption; (3) determining the Family Code section 721 undue influence presumption prevailed over the Evidence Code section 662 form of title presumption; and (4) applying the undue influence presumption where there was no showing of unfair advantage.

While the first two contentions have merit, we will affirm the judgment.

## FACTS AND HISTORY OF THE PROCEEDINGS

After decedent died intestate in 2016, wife petitioned the probate court to determine a home, titled in decedent's name, was community property. The children objected, and a trial was held. At the trial, testimony was provided by the children, decedent's sister, wife, a mortgage broker, and a real estate agent.

### The Children's Testimony

As testified to by the children, decedent was born in 1939. He retired in 2001, and he has two children from his first marriage.

Around 1998, decedent's home was foreclosed, and he moved into a home owned by one of his children and her husband. Decedent was charged a significantly reduced rent, allowing him to repair his credit and save. In 2006, decedent inherited over $44,000 from his father and told his family he wanted to invest and save the money to buy a house.

Decedent met wife in 2007. They married in 2008. Decedent believed his prior wife took advantage of him, but he said he had learned from the experience and would not be taken advantage of again.

When decedent and wife were married, she moved in with him in the home owned by decedent's child. Decedent and wife did not commingle assets, and they held no joint accounts or assets.

In 2010, decedent and wife decided to buy a home. Decedent took title to the home, as "Benny M. Wall, a married man as his sole and separate property." And he used $99,205.83 from his separate property account for the down payment and financed the balance of the $134,000 purchase price.

During the marriage, decedent's income came only from separate property sources: pension benefits earned pre-marriage and social security benefits. He deposited that income into his bank account and made mortgage payments from that account.

In 2013, decedent refinanced the home. He did not include wife on the loan, and the 2013 deed of trust listed the borrower as, "Benny M. Wall, a married man as his sole and separate property."

The children add that, "[t]his would have been a perfect time to include [wife] as a borrower on the loan and add her to title, had [decedent], in fact, intended to transmute the Property. . . ."

The children also testified that the decedent and wife's marriage was not close. They were "more like roommates than spouses." They also testified that when decedent died unexpectedly in 2016, wife refused to allow the children to access decedent's safe. She told them she did not find a will when she drilled out the safe the day after his death.

Decedent's Sister's Testimony

Decedent's sister testified to decedent receiving an inheritance from his father, and that the marriage was not close. She also testified that decedent told her that decedent's

3

wife had signed a deed indicating she had no interest in the home and decedent wanted his assets to go to his children.

Wife testified that in 2008, she wrote decedent a check for $3,500 to use toward the future purchase of a home. In 2010, she and decedent decided to buy the home as joint owners. They applied for a loan as joint borrowers but were denied because she still had a home mortgage from her previous marriage.

The mortgage broker testified that when decedent and wife were denied a loan, she suggested decedent apply for the loan himself and add wife's name to the title later. She recalled that decedent and wife agreed to do this.

Decedent then applied as the sole borrower and was approved. Afterward, the mortgage broker sent a congratulations card to decedent and wife congratulating them on their purchase. The mortgage broker testified she understood they both were owners.

The real estate agent also testified that he understood that decedent and wife were buying the house together, though he did not know how they took title.

Wife testified that a few days after they signed documents at the title company, the escrow officer called and said wife needed to sign another document. Wife was told it was a normal procedure though she did not know what "quitclaim" meant, and no one had explained it to her. Decedent encouraged her to sign the quitclaim and said he would add her to the title later. Wife and decedent then went to the title office and wife signed the quitclaim deed, whereby she "remise[d], release[d], and forever quitclaim[ed]" the home to decedent.

Wife testified that after signing, decedent told her the quitclaim meant nothing, and she was the owner of the property. Throughout the marriage, decedent reiterated that she was an owner and it was "their home." In 2013, she sold her home from her prior marriage, and wrote a check to decedent for half the sale proceeds, $2,500, plus $100 to

4

help pay for dump fees. She said it "should be used towards the purchase of their future home." The check memo line said "loan/help."

After the home was purchased, wife paid for improvements; she also painted, worked to improve the landscaping, and installed fixtures. Decedent contributed to the home from his separate property funds, paying for a new roof, a cement patio, and new carpet. They split household expenses, with decedent paying the power and trash bill, and both of them purchased groceries.

Wife testified that she helped because she believed she was an owner of the home. Also, her son and nephew rented rooms in the house, and she and decedent agreed she was entitled to half the rent. But for convenience, checks were written to decedent, who deposited them into his separate property bank account. Wife testified that decedent's actions led her to believe she was financially contributing to paying down the mortgage on their home and was an owner of the property.

Wife also testified her marriage to decedent was close and intimate.

### The Trial Briefs

In her trial brief, wife argued that two Family Code presumptions should apply, sections 760 and 721. Family Code section 760 provides that property acquired during a marriage is community property. Wife argues that Family Code section 721, subdivision (b) provides that there is a rebuttable presumption of undue influence when one spouse obtains an advantage over another in a community property transaction. The children maintained that the presumption in Evidence Code section 662 applies: absent clear and convincing proof to the contrary, ownership is as set forth in the legal title.

### The Probate Court's Ruling

The probate court granted wife's petition. It explained that historically, marital property characterization turned on form of title, unless ownership interests were

5

otherwise established. That form-of-title presumption is now embodied in Evidence Code section 662.

But while Evidence Code section 662 remains viable for civil matters, a different analysis now applies to marital estates. The court cited Justice Chin's concurrence *In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1413-1414 (*Valli*), which explained: "the statutes in the Family Code governing community property, including the section 760 presumption, are sufficient unto themselves. . . . Future courts resolving disputes over how to characterize property acquired during the marriage in an action between the spouses should apply the community property statutes found in the Family Code and not section 662."

The probate court acknowledged the dispute was not between spouses but concluded *Valli* still applied because the children essentially stood in the shoes of decedent. Accordingly, the community property presumption of Family Code section 760 applied.

As to Family Code section 721, the court noted that spouses are subject to rules governing fiduciary relationships. And where an interspousal or community transaction advantages one spouse over another, a presumption of undue influence arises. Citing *Lintz v. Lintz* (2014) 222 Cal.App.4th 1346, 1353 (*Lintz*), the court concluded that where Evidence Code section 662 and Family Code section 721 conflict, Family Code section 721 prevails.

The court went on to conclude that neither presumption had been rebutted. As to Family Code section 760, the court called evidence of tracing "interesting" but not dispositive. It reasoned that because source of funds is insufficient to overcome a form of title presumption, it could not overcome a community property presumption either. The court further found "no persuasive evidence of any communicated intention, agreement, or common understanding between the spouses sufficient to overcome the presumption that [the home] was intended to be a community asset." Wife, by contrast, presented

6

credible evidence, including the real estate professional, that she and decedent were buying the home together.

And as to Family Code section 721, the probate court found the presumption applied to the purchase of the home, the decision to title it in decedent's name, and the signing of the quitclaim. It further found the children failed to show by a preponderance of the evidence that the purchase and titling of the home were transactions freely and voluntarily entered into with full knowledge of the relevant facts.

DISCUSSION

On appeal, the children challenge that ruling, advancing four contentions in support: (1) the Evidence Code section 662 presumption and not the Family Code section 760 presumption applied; (2) if Family Code section 760 applied, the probate court erred in finding it had not been rebutted; (3) the Evidence Code section 662 presumption and not the Family Code section 721 presumption applied; and (4) even if the Family Code section 721 presumption applies in the probate context, it was inapplicable here without a showing of unfair advantage.

As we explain, while the first two contentions have merit, we conclude the Family Code section 721 presumption was properly applied, and substantial evidence supported the conclusion that it had not been rebutted. On that basis we affirm the judgment.

I

*Family Code Section 760 and Evidence Code section 662*

The children first contend Evidence Code section 662, and not Family Code section 760, should apply when determining the character of real property in a probate matter. They also challenge the probate court's reliance on *Valli*. This contention is well taken.

Family Code section 760 and Evidence Code section 662 give rise to conflicting presumptions in this case. The former provides that: "Except as otherwise provided by

7

statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." (Fam. Code, § 760.) The latter states: "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof." (Evid. Code, § 662.)

Here, the probate court relied on Justice Chin's concurrence, in *Valli,* in determining the community property presumption prevails. At issue, in *Valli*, was whether a husband's life insurance policy, purchased with community property and put in the wife's name, was community or separate property upon dissolution of the marriage. (*Valli, supra,* 58 Cal.4th at p. 1399.) *Valli* held the Evidence Code section 662 form of title presumption does not apply in a dissolution proceeding when it conflicts with transmutation statutes, and thus the policy was community property despite being in the wife's name. (*Id*. at p. 1406.) Justice Chin's concurrence further explained the role of the form of title presumption in an action between spouses: "In my view, as in the view of all amici curiae to appear in this case—law professors and attorneys specializing in the field—the Family Code section 760 presumption controls in characterizing property acquired during the marriage *in an action between the spouses*." (*Id.* at p. 1408, italics added.)

Recently, in *In re Brace* (2020) 9 Cal.5th 903, our Supreme Court concluded *Valli's* holding that the community property presumption prevails is not limited to dissolution actions, though it reiterated, "form of title controls at death. . . ." (*Id*. at pp. 927-928, 931.) The *Brace* court considered whether Family Code section 760 prevailed over Evidence Code section 662 in disputes between a married couple and a bankruptcy trustee. (*Id.* at p. 911.) Concluding it did, the court explained, "we see no basis in the text, purpose, or history of Family Code section 760 to confine *Valli's* holding in this way. It would carve a major hole in the community property system to hold that Evidence Code section 662, a general statute that addresses the import of legal

8

title—and not Family Code section 760, a statute that specifically addresses the characterization of property acquired during marriage—governs the characterization of property acquired during marriage for all purposes other than divorce." (*Id*. at pp. 928.) But the court went on to explain that its approach "does not undermine the stability of title in the context of probate," adding that that "[c]ourts have consistently held that for property titled in joint tenancy, the form of title controls at death." (*Id*. at p. 931.) And it added: "Our decision today does not alter the well-established default rule that form of title controls at death. . . ." (*Id*. at p. 934.)

In light of *Brace*, we think the probate's court's reliance on *Valli* was misplaced. Justice Chin's concurrence pertained to actions between spouses. And while the probate court's reasoning that the children stand in the shoes of the decedent has some intuitive appeal, it collides with the *Brace* court's teaching that form of title controls at death. We therefore conclude the probate court erred in determining Family Code section 760 prevailed over Evidence Code section 662 in this probate action. And because we so hold, we need not address the children's argument that, even if Family Code section 760 prevailed and the community property presumption did apply, the probate court erred in its determination of whether the presumption was rebutted.

II

*Family Code section 721 and Evidence Code section 662*

The children next contend the probate court erred in determining Family Code section 721 applies over Evidence Code section 662 in the probate context, where the alleged influencer is not alive to testify. In support they cite *Estate of Levine* (1981) 125 Cal.App.3d 701, 705 (*Levine*) (superseded by statute on other grounds as noted by *In re Marriage of Weaver* (1990) 224 Cal.App.3d 478, 481.) They also challenge the probate court's reliance on *Lintz,* which they maintain is distinguishable.

9

Family Code section 721, subdivision (b) provides in pertinent part: "in transactions between themselves, spouses are subject to the general rules governing fiduciary relationships that control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other."

As the children implicitly concede, *Lintz* stands for the proposition that section 721 can apply in the probate context. There, the decedent died at age 81, while married to the defendant. (*Lintz, supra*, 222 Cal.App.4th at p. 1350.) Leading up to his death, decedent executed several amendments to his trust, giving defendant more of his assets upon his death, transmuting property to community property, disinheriting his oldest children from a prior marriage, and empowering defendant to disinherit his youngest child and to leave unspent residue to her children. (*Id*. at p. 1350.) The decedent's children successfully sued the defendant for claims including fiduciary abuse of an elder, breach of fiduciary duty, conversion, constructive trust, and undue influence. (*Ibid*.) Affirming the decision, the appellate court explained that Family Code section 721 was applicable, and while there was no indication the probate court had applied that presumption, the presumption nevertheless should have been applied both to the transmutation of the separate assets as well as to the trust granting defendant a virtually unfettered life estate in decedent's property, disinheriting two of the decedent's children, and empowering defendant to disinherit another and pass the assets to her own children. (*Id*. at p. 1353.)

Here, the children attempt to distinguish *Lintz*, arguing there the alleged influencer was alive to provide testimony to rebut the presumption of undue influence, while, here, the decedent is the alleged influencer and cannot testify. They add that *Lintz* did not consider the applicability of the Evidence Code section 662 form of title presumption.

10

But nothing in *Lintz* suggests Family Code section 721's applicability turns on the ability of the alleged influencer to testify. Further, the children have pointed to no authority for that proposition, nor are we aware of any.

Further, while the *Lintz* court did not consider the intersection of Evidence Code section 662 and Family Code section 721, other courts have. Those courts make clear that when the two presumptions conflict, the undue influence presumption prevails. (*In re Marriage of Delaney* (2003) 111 Cal.App.4th 991, 998 ["In cases such as this, involving interspousal property transactions, the 'irreconcilable conflict' between the two presumptions established by section 721 and Evidence Code section 662 has been resolved in favor of section 721, based on the intent of the Legislature in enacting fiduciary protections for interspousal transactions and general rules of statutory construction"]; *In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 345 ["the form of title presumption simply does not apply in cases in which it conflicts with the presumption that one spouse has exerted undue influence over the other"]; *In re Marriage of Brooks & Robinson* (2008) 169 Cal.App.4th 176, 190 fn 8. (abrogated by *Valli*, *supra*, 58 Cal.4th at p. 1405 on other grounds) ["The form of title presumption does not apply when it conflicts with the presumption of undue influence by one spouse over the other"]; *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 283 ["section 662 should not apply in marital proceedings when such a conflict appears"]; see also *In re Marriage of Bonds* (2000) 24 Cal.4th 1, 28 ["It long has been the rule that '[w]hen an interspousal transaction advantages one spouse, "[t]he law, from considerations of public policy, presumes such transactions to have been induced by undue influence" ' "].)

Finally, in *Levine*, upon which the children rely, Family Code section 721 was never considered. While the *Levine* court explained, "[f]or the purpose of determining the character of real property upon the death of a spouse, there is a rebuttable presumption that the character of the property is as set forth in the deed," undue influence was never alleged nor implied (the decedent in *Levine* had wanted his home to be

11

considered community property but held it in joint tenancy for convenience).  (*Levine, supra*, 125 Cal.App.3d at pp. 704-705.)  *Levine* is therefore of no help.  (See *B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11 [" ' "cases are not authority for propositions not considered" ' "].)

We therefore conclude the probate court properly concluded the Family Code section 721 undue influence presumption applied.

## III

### *Application of Family Code Section 721*

Finally, the children contend that if Family Code section 721 is applicable in this context, it still should not apply here where there is no showing of unfair advantage.  They reason that the presumption has largely applied where the disputed property was once characterized as community property or was purchased or financed with community funds.  But here, the home was always the decedent's separate property, and was purchased with his separate funds and titled in his name alone, and the status as separate property was never changed during the marriage.

The presumption has been applied in near identical circumstances.  In *In re Marriage of Starr* (2010) 189 Cal.App.4th 277, 280, the husband bought a home in his name only and paid the down payment with his separate property funds.  Before escrow closed, the wife quitclaimed her interest in the house.  (*Id*. at p. 280.)  At trial, the wife testified she had agreed to the broker's suggestion to quitclaim the property because her credit was poor, and her husband could qualify for a better interest rate.  (*Ibid*.)  The broker told them they could add her back onto the title, and husband said he would.  (*Ibid*.)  The trial court found the home was community property, and the wife did not freely and voluntarily sign the quitclaim deed.  (*Id*. at p. 281.)  Affirming, the court of appeal concluded the husband's failure to add the wife to the title was a breach of his fiduciary duty.  (*Id*. at p. 283.)  It explained that the breach of a confidential relationship

can constitute undue influence as constructive fraud.  (*Id*. at pp. 284-285.)  And in the instant case, the lender's suggestion to have the wife quitclaim her interest and be added to the title later, combined with the husband's failure to fulfill his promise to do so, constituted constructive fraud amounting to undue influence.  (*Id*. at p. 289.)

Just as in *Marriage of Starr*, here, wife presented evidence that she and decedent decided to buy the home together.  It was only after they were denied a loan that decedent, at the broker's suggestion, applied for the loan by himself.  Wife later signed the quitclaim at decedent's assurance that it meant nothing and that she would be added to the title later.  While the children presented some contrary evidence, the wife's evidence constitutes substantial evidence of constructive fraud to support the probate court's finding of undue influence under Family Code section 721.

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278, subd. (a)(5).)


 

 
                                           _____

                                           HULL, Acting P. J.


We concur:


_____

MURRAY, J.


_____

KRAUSE, J.