Filed 7/11/22 Marriage of Farfan and Medrano CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of CECILIA ZAVALA FARFAN and MIGUEL MEDRANO | H047972<br>(Monterey County<br>Super. Ct. No. 17FL001024) |
| CECILIA ZAVALA FARFAN,<br><br>Appellant,<br><br>v.<br><br>MIGUEL MEDRANO,<br><br>Respondent. | |

Appellant Cecilia Zavala Farfan (Cecilia) challenges a postjudgment order characterizing the family home, which she shared with her ex-husband, respondent Miguel Medrano (Miguel),[1] as community property. Cecilia raises a number of claims, including that the presiding judicial officer improperly reconsidered findings made by a different judicial officer and that the order violates California's transmutation statutes by failing to give effect to a valid quitclaim deed. For the reasons explained below, we affirm the order.

---

[1] For clarity, we refer to the parties by their first names. (See *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1.)

# I. FACTS AND PROCEDURAL BACKGROUND

A. *Marriage and Purchase of Home*[2]

Cecilia and Miguel married in 2007 and separated in 2016. In 2011, they obtained a family home, located at 19020 Souza Way in Salinas (home). The home is the sole asset at issue in this appeal.

Due to his credit history, Miguel did not qualify for a home purchase loan. Therefore, Miguel arranged for his brother Alfredo[3] to participate in its purchase. Alfredo and Cecilia appeared on the home's title as joint tenants and were the named borrowers of the bank loan.

In connection with the purchase of the home, Miguel signed a quitclaim deed at the request of either the lender or the title company. The quitclaim deed stated that Miguel waived any future interest in the home and deemed the home to be Cecilia's separate property.

For a number of years, Cecilia and Miguel lived together in the home. Miguel contributed to the monthly mortgage payments, although the parties dispute the amount of his contribution. In 2015, Miguel moved out of the home.

B. *Procedural History*

1. Initiation of Proceedings

In 2017, Cecilia filed a petition for dissolution of the marriage (petition). In the petition, Cecilia requested that the trial court confirm the home as her separate property. The dissolution case was assigned to Judge Larry E. Hayes of the Monterey County Superior Court. (The identities of the bench officers who presided over the hearings on the petition are germane to Cecilia's claims on appeal.)

---

[2] The following facts were undisputed in the trial court and we derive them from the petition for dissolution and response and the trial testimony of Cecilia and Miguel.

[3] Alfredo, who has not participated in this appeal, testified that his name is Alfredo Medrano, but he is also known as Alfredo Jacuinde.

2

Miguel contested Cecilia's characterization of the home. In May 2018, Miguel filed papers in the trial court contending that the home was a community asset that should be divided equally. Miguel raised various arguments, including that he and Cecilia had previously agreed the home would be his and Cecilia's and that Alfredo was just "standing in for [Miguel] so the purchase could occur." Miguel contended Cecilia breached her fiduciary duty and committed constructive fraud by not placing Miguel on the title to the home. Alternatively, assuming there was no fraud or wrongdoing, Miguel argued the court could impose a resulting trust based on their oral or implied agreement that Cecilia and Miguel would own the home together.

### 2. 2018 Court Trial and Statement of Decision by Judge Johnson

A court trial occurred on June 4, 2018, that addressed the ownership of the home, among other issues. Judge Margaret S. Johnson presided over the trial due to Judge Hayes's temporary unavailability. Judge Johnson heard testimony from Cecilia and Miguel but not from Alfredo, who was not then a party to the litigation.

Cecilia testified that she owned the home with Alfredo, Miguel's brother, and separately from Miguel. Miguel had handled the purchase arrangements for the home with respect to the mortgage and his brother's involvement. Cecilia did not know much about the purchase of the home until she signed the purchase documents.

Miguel told Cecilia that he could not be on the loan for the home because of his poor credit, but his brother would cosign with her. Based on her credit, Cecilia could not have qualified for a loan by herself. She estimated the down payment on the house was $14,000.

Cecilia never promised to add Miguel to the title of the home, and she never had a conversation or any agreement with Alfredo about the title. Following their separation, Miguel asked Cecilia to pay him approximately $80,000 to buy out his interest in the home. Cecilia sought legal advice and understood for the first time that the quitclaim deed meant that Miguel did not have an ownership interest in the home. Cecilia did not

3

believe Miguel should receive any money from her for the home. When she signed the purchase documents, Cecilia believed the "family" owned the home, by which she meant herself, Miguel, and their daughter. Cecilia denied that there had been any agreement to place Miguel on the title or on the mortgage.

Miguel testified that, before the purchase of the home and before he signed the documents in November 2011, he and Cecilia had an agreement that the home was going to belong to both of them. Miguel understood that it was going to be "her house and mine for my daughter, and my brother [Alfredo] was only helping us with his credit." He did not expect Alfredo to have any real ownership interest in the home. He and Cecilia had talked about putting the home in both of their names sometime after the purchase.

At the time of the home's purchase, Miguel had approximately $2,500 in his bank account. Miguel contacted coworkers, friends, his brother Alfredo and other family members for money. Miguel stated he was able to "gather that $14,000 that we gave as the down payment," and he and Cecilia eventually paid back those loans.

Miguel went with Cecilia and Alfredo to the title company office in 2011, and there was a "big packet" of documents to sign. No one explained the documents to Miguel, but he signed the documents, including the quitclaim deed. There was no interpreter, and the person assisting Miguel at the signing did not speak Spanish. There was also no interpreter for his brother Alfredo. Miguel only vaguely remembered why he had to sign the quitclaim deed. He understood it was "[p]art of the title of the house," which Cecilia told him he had to sign in case "something happened to her." Miguel would not have signed the quitclaim deed if he had been told what it actually meant.

Miguel knew he was not on the title for the home, but he thought he was "going to be on the title because [he] was [Cecilia's] husband." At some point, he and Cecilia discussed changing the title and refinancing the home, but they did not because it was too expensive. Miguel was not a party to the loan on the home. Miguel made the monthly mortgage payments on the home until his separation from Cecilia.

4

Judge Johnson admitted a number of exhibits into evidence, including the schedule of assets and debts that Cecilia had filled out as part of the dissolution, which included a copy of the quitclaim deed signed by Miguel.

On July 30, 2018, Judge Johnson gave an oral statement of decision. She found that the parties were married at the time the home was purchased and neither of them had sufficient money or the credit to buy it. It appeared Miguel was the one who had initiated the purchase of the home, had solicited the financing for the purchase, "got the loans[, and] got his brother involved."

Turning to Miguel's argument that Cecilia had breached her fiduciary duty to him, Judge Johnson stated that "since it was [Miguel's] idea and since he set the whole thing up, the only possible breach of fiduciary duty is the signature on the [quit] claim deed."

Judge Johnson did not find a breach of fiduciary duty. Judge Johnson stated there had been no undue influence in obtaining Miguel's signature on the quit claim deed, given that Miguel was the "leading force" in the transaction and appeared to "know what he was getting into." Judge Johnson further found that there was no unjust enrichment because Cecilia "doesn't have any more coming out of this than she had going into this," and she was still a co-owner of the home with Alfredo.

Judge Johnson noted the statutory presumption that the home was community property because it was purchased during the marriage. However, she found that this statutory presumption "was rebutted by the fact of the deed and the fact that husband's brother is on the deed, and the testimony in court supports the fact that the presumption of community property would be rebutted." She noted Miguel had watched his brother sign the deed, and Miguel had signed the quit claim deed and at "any time [could] have stopped." Judge Johnson characterized Miguel as a "smart man," who had "set this whole thing up."

5

Judge Johnson declined to establish a constructive trust, because there was no evidence of fraud. She concluded that any trust would have to be a resulting trust.[4] With respect to consideration, she found that Alfredo put in his "good credit and his name," which would impact his ability to purchase another home. This contribution constituted sufficient consideration for a contract.

Judge Johnson found the house was not community property but instead was Cecilia's separate property that she owned with Alfredo. Judge Johnson observed that the community had paid for the house and made all mortgage payments from 2011 to the present, so *Moore/Marsden* calculations[5] might be needed related to the separate property interest.

Judge Johnson did not decide whether to impose a resulting trust because Alfredo was not then a party to the litigation. She observed there was "[m]aybe" a resulting trust and the "factors supporting a resulting trust are probably here" but that the "only problem with the resulting trust theory is that the resulting trust is against [Alfredo] and not against [Cecilia]."

---

[4] Courts may employ "equitable remedies such as constructive or resulting trusts, when warranted by the facts of the case." (*Marvin v. Marvin* (1976) 18 Cal.3d 660, 665.) While both resulting and constructive trusts "are involuntary trusts implied by law and exempt from the statute of frauds," they are not the same. (*Martin v. Kehl* (1983) 145 Cal.App.3d 228, 238.) A resulting trust " ' "arises from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest . . .. [¶] It has been termed an 'intention-enforcing' trust, to distinguish it from the other type of implied trust, the constructive or 'fraud-rectifying' trust. The resulting trust carries out the inferred intent of the parties; the constructive trust defeats or prevents the wrongful act of one of them." ' " (*Ibid.*, italics omitted.)

[5] "Generally, '[w]hen community property is used to reduce the principal balance of a mortgage on one spouse's separate property, the community acquires a pro tanto interest in the property. [Citations.] This well-established principle is known as "the *Moore/Marsden* rule." ' " (*In re Marriage of Nelson* (2006) 139 Cal.App.4th 1546, 1552.) It is derived from the cases of *In re Marriage of Moore* (1980) 28 Cal.3d 366 and *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426. (*Nelson*, at p. 1552, fn. 5.)

Judge Johnson ordered the proceedings stayed for 60 days to allow Miguel to decide whether to join Alfredo as a necessary party to the litigation. Judge Johnson explained that "[a]ll I am doing is saying the status quo remains" but that "no action is to be taken on the property other than a legal filing." Additionally, she stated that "I am not actually making a ruling on the resulting trust because I can't, because he's not joined, and he is a necessary party."

Judge Johnson set the case for a settlement conference in October 2018. She was willing to conduct the conference, but the decision about whether she would do so would be decided by Judge Hayes because it was "his court."

### 3. 2019 Court Trial by Judge Hayes and Further Proceedings

Following Judge Johnson's decision at the 2018 court trial, Judge Hayes presided over the remaining proceedings, including issuing the order from which Cecilia now appeals. Judge Hayes granted Miguel's motion to join Alfredo as a necessary party to the marital dissolution action.

Miguel filed a motion, accompanied by declarations, requesting that the court find a resulting trust in his favor. Alfredo declared that he had agreed to help his brother Miguel and Cecilia purchase a home, but "it was always understood" and "intended" that Alfredo was "just substituting in for [Miguel] with the ultimate result being that [Miguel] and [Cecilia] would own their family home together." But "[u]nfortunately, [Miguel] and [Cecilia] separated prior to achieving the ultimate goal of replacing my name on title and loan with [Miguel]'s name." Alfredo was in "full agreement that the interest [he had] in the home is my [Miguel's']" and that this was the "result that we intended."

Cecilia objected to Miguel's request to substitute Miguel for Alfredo on the title. She disputed that Miguel was an "equity owner" in the home and asserted her belief that a partition action needed to be filed against Alfredo, who was a non-equity owner. Once title to the home was settled, Alfredo would have a remaining interest in the form of a *Marsden* calculation.

7

On March 15, 2019, Judge Hayes conducted a hearing on Miguel's request for a resulting trust. Alfredo was present as a joined party. Miguel's counsel argued that Miguel was requesting that the court "find that there is a resulting trust where we would substitute husband, [Miguel], on title for [Alfredo] and he would have his half of the house—his interest in the house." Later, Judge Hayes asked Miguel's counsel whether Miguel had a community interest in the whole house and Miguel's counsel responded "Absolutely." Over objection by Cecilia's counsel that this assertion was incorrect, Judge Hayes ruled that there was a resulting trust "flowing from [Alfredo] to [Miguel]" and the home therefore "becomes a community asset in its entirety." The trial court ordered that Alfredo's name be removed from the title and Miguel's name substituted for Alfredo's.

Cecilia filed a motion for reconsideration and clarification pursuant to Code of Civil Procedure, section 1008, subdivision (a) (motion for reconsideration). The motion was accompanied by a memorandum of points and authorities and a declaration from Cecilia's counsel. The motion asserted that the court's March 15, 2019 order contradicted Judge Johnson's earlier findings and rulings. The motion requested that the trial court follow Judge Johnson's ruling, value Alfredo's ownership interest in the home as well as Miguel's interest, and allow Cecilia time to "purchase out [Alfredo's] interest, if any, and [Miguel's] community interest." Miguel opposed Cecilia's motion, and Cecilia replied.

The parties appeared before Judge Hayes on the motion for reconsideration. Counsel for the parties and Judge Hayes had an unreported discussion in chambers. Judge Hayes stated on the record: "We talked in chambers and I need to clarify my order. I made a statement about – at the end of the hearing about the character of the half that [Judge] Johnson had decided was [Cecilia's] separate property. I said it was already community property because that was my recollection. It is not. Judge Johnson found that it was a separate property interest [Cecilia] had in half the property, and then she

8

reserved the issue of a resulting trust." Judge Hayes stated that he had found a resulting trust and he would address "the character of that half of the property" and that would be decided at a settlement conference if it was not resolved. The court stayed its prior ruling to correct the deed for the home "pending our next hearing." The court stayed any action to correct the deed and stated that the "character of the resulting trust" would be decided at the next settlement conference.

On June 19, 2019, Judge Hayes entered a judgment of dissolution on reserved issues addressing the July 2018 court trial before Judge Johnson.[6] The judgment set forth Judge Johnson's findings, inter alia, that she found the home was Cecilia's "separate property" with Alfredo, and that there was no undue influence or unjust enrichment involved in the transaction.

On October 21, 2019, Judge Hayes conducted a court trial on the characterization of the home. He admitted into evidence a number of exhibits, including a document that reflected the appraisal value of the home, a copy of the grant deed, and the quitclaim deed signed by Miguel.

Alfredo, Cecilia, and Miguel all testified at the October 2019 court trial. Alfredo testified (through a Spanish-speaking interpreter) that he purchased the home in 2011 with Cecilia. While he had not contributed any money towards the purchase of the home, he had made a loan of some money for it, which Miguel and Cecilia had paid back. Alfredo understood that Cecilia and Miguel would be equal owners of the home because they were a couple and a family. Alfredo was not aware that Miguel had signed a quitclaim deed. The bank mortgage for the home was in Alfredo's name, but Alfredo did not make any mortgage payments.

---

[6] In March 2019, the trial court had entered a judgment of dissolution restoring Cecilia and Miguel to their status as single persons and addressing other issues such as child custody and visitation, but not addressing the division of the home.

9

Cecilia testified that both she and Alfredo were on the title to the home. Miguel had arranged for the purchase of the home. She had not understood why Miguel had signed a quitclaim deed at the time of the purchase. Cecilia could not recall the amount of the down payment, but the amount had come from her and Miguel.

Cecilia had been paying the mortgage on the home since December 2011. She had not received any contribution from Alfredo. Alfredo had never attempted to move into the home. Cecilia's understanding when she purchased the home was that it would be her "family's home."

Miguel testified (through a Spanish-speaking interpreter) that he had been required to sign the quitclaim deed as part of the home purchase. He understood that he and his wife were the owners when they purchased the home, and he did not believe that he had been giving his wife a gift when he signed the quitclaim deed. Miguel did not know what the quitclaim deed was but had "thought it was part of the title." He could not read English at the time he signed the quitclaim deed, which was in English. (The record contains no evidence the quitclaim deed was translated from English to Spanish for Miguel.) When questioned about the papers he signed for the home purchase, Miguel stated he knew Cecilia "was buying the home with [Alfredo], but [Alfredo] was there to represent me." Miguel knew he could not be on the title for the home because of his poor credit.

From the time the home was purchased up until the time he moved out in 2015, a combination of both Miguel's and Cecilia's incomes paid the mortgage on the home. After he moved out of the home, Miguel continued to make mortgage payments on the home. He estimated he continued to pay the mortgage for around a year after he moved out in 2015 and then stopped making payments when he "saw [his] attorney." Miguel acknowledged signing the quitclaim deed, but he "didn't know what it was at the time." He "knew that [he] wasn't going to sign anything of the title because [he] didn't have

good credit, but they did make [him] sign some papers because [he] was [Cecilia's] . . . husband."

After hearing closing arguments, Judge Hayes found there was "undisputed evidence that when these folks bought this home it was intended to be a community asset in its entirety. The grant—the Quitclaim Deed was done solely for the purpose of completing this community property transaction." Judge Hayes noted that he was not "present during the first trial, I wasn't the judge that made the decision, but I query whether or not Judge Johnson would have made the decision that she did had she heard the same evidence that I did today on the intention of the parties."

After an exchange with Cecilia's counsel over how Cecilia and Miguel would hold title to the home in light of his ruling, Judge Hayes stated that "I think the cleanest finding that I could make, if it weren't for Judge Johnson's ruling, is that this is a community asset and deal with it from that perspective; but given that I cannot overturn that decision, I guess it has to be a tenancy in common finding." But he was a "little uncertain" about that conclusion.

After the filing of supplemental briefing, Judge Hayes issued a written order on December 2, 2019. He summarized the relevant background of the proceedings and confirmed his prior finding that, based on the testimony of Cecilia, Miguel, and Alfredo, it was "irrefutably established" that the home was "intended to be a community asset in its entirety." He further reiterated that he had found that the quitclaim deed "was done solely for completing [the] community property transaction."

Regarding the question of whether he could reconsider Judge Johnson's prior decision, Judge Hayes decided that he had the authority to consider her "interim orders." Judge Hayes explained that he had reviewed the transcript of the hearing where she rendered her decision and found it "clearly shows she envisioned further litigation/proceedings [that] would need to be handled by another judge, and in fact the judge assigned to the case." Addressing Cecilia's argument that Judge Johnson's

11

judgment could not be reconsidered, Judge Hayes stated that "even if that is true her separate interest would clearly be subject to a *Moore[/]Marsden* calculation."[7]

Judge Hayes found in favor of Miguel, concluding that Cecilia could not overcome the presumption of undue influence and "therefore the home is a community asset to be divided equally" and, furthermore, "even if [that] conclusion is incorrect, a constructive trust was created for the benefit of [Cecilia] and [Miguel] and the entire home is a community asset to be divided equally." Judge Hayes found that the net equity in the home to be divided was $264,288.39 and awarded the home to Cecilia with an "equalization" payment to Miguel of $132,144.19.

On December 12, 2019, 10 days after Judge Hayes's ruling, Miguel filed a document titled "Objection to 'Order after Submission' (Tentative Decision and/or Proposed Statement of Decision) made by Honorable Larry E. Hayes dated December 2, 2019 pursuant to Rules of Court Section [*sic*] 3.1590 and [Code of Civil Procedure] section 632" (some capitalization omitted and referred to hereafter as Miguel's objections) and requested a hearing.

Miguel's objections stated that he was not objecting to the "result" of the trial court's ruling but rather was attempting to "address the legal analysis." His objections addressed various aspects of the December 2, 2019 order and requested, inter alia, that Judge Hayes include a "discussion of the interlocutory nature of Judge Johnson's

---

[7] Regarding application of the *Moore/Marsden* rule, Judge Hayes decided to rule on that issue in the interest of "judicial economy," in the event that "this Court is found later on appeal to be bound by the Judgment as argued by [Cecilia]." Judge Hayes found that the value of the home was $430,000 at the time of trial with a mortgage balance of $165,711.61. Judge Hayes found Miguel's testimony that he continued to pay the mortgage after the 2016 separation to be more "credible" than Cecilia's contrary testimony, and that neither party was entitled to *Watts* credits. Judge Hayes ordered the parties to file calculations of the value of the community interest under *Moore/Marsden,* assuming the affirmance of Judge Johnson's ruling that Cecilia had a separate interest in half of the home and that this court would find the resulting trust created a community interest in the other half.

12

findings," which Miguel asserted supported Judge Hayes's authority to modify the prior ruling. Miguel also asked for a clarification that the court was actually applying "resulting trust" principles, rather than those related to a constructive trust.

Miguel's objections proposed two "scenarios" for the trial court to apply regarding the parties' interests in the home. In the scenario ultimately selected by Judge Hayes, Miguel proposed that the court impose two resulting trusts. First, as to Alfredo's interest in the home, the court would impose a resulting trust on that interest. Alfredo would hold his interest "in trust for the benefit of the community, husband and wife" and the trial court would order Alfredo to convey his interest to Cecilia and Miguel. Second, as to Cecilia's interest, the interest "derived from [Miguel's] quitclaim deed to [Cecilia] would likewise be subject to a resulting trust holding the interest conveyed by quitclaim in trust for the benefit of [Miguel] to reflect the parties' true intentions," and the court would order Cecilia "to either cancel the quitclaim deed or transfer back to [Miguel] whatever interest was transferred by [Miguel]'s quitclaim deed." Under this scenario, both Cecilia and Miguel would be entitled to half the value of the property and no *Moore/Marsden* issue would be involved.

On January 8, 2020, Judge Hayes held a hearing on Miguel's objections. Miguel asserted that the court, as a court of equity, could fashion an equitable remedy so that Miguel and Cecilia owned the home equally, and that it could "wipe out the quitclaim deed" that Miguel had signed. Cecilia stated that, pursuant to the transmutation statutes, the trial court did not have such authority to "set aside the quitclaim deed."

At the hearing, Judge Hayes reiterated that one of his key factual findings was that the parties intended the home "to be a community asset, owned 50/50." He noted that "[t]he quitclaim deed was nothing but a vehicle to help create this situation." After hearing further argument of counsel, including on whether Judge Johnson's prior decision was modifiable, the trial court took the matter under submission.

13

### 4. January 17, 2020 Order

On January 17, 2020, Judge Hayes issued an order titled "Further Order After Submission" (some capitalization omitted), which is the order from which Cecilia now appeals.

With respect to Miguel's objections filed on December 12, 2019, Judge Hayes concluded the objections were "all well taken." He characterized Judge Johnson's decision as "an interlocutory ruling, and subject to modification by this Court as such based on its prior analysis of the history of the proceedings." Judge Hayes noted that he had previously found that the "undisputed" intention of all the parties involved in the home's purchase was that it was a "community residence" and that "equity cries out for an equal division of the home (subject to any credits or reimbursement claims had they been supported by credible evidence)."

The trial court stated it found the more appropriate "scenario" to implement was the first scenario proposed in Miguel's objections (referred to by the trial court as "Scenario 1").[8]

However, the order further states that "[i]n the event this Court's decision is overturned on appeal," then "Scenario 2 would be the appropriate mechanism by which the parties' intentions would be carried out.[9] And if [*Moore/Marsden*] is involved in

---

[8] Although the order did not describe Scenario 1 in detail, Miguel's objections stated that that scenario would involve having Cecilia "cancel the quitclaim deed or transfer back to [Miguel] whatever interest was transferred by [Miguel]'s quitclaim deed," Miguel and Cecilia would ultimately be entitled to half of the value of the home, and there would be no need to address rights under the *Moore/Marsden* rule.)

[9] The second scenario proposed by Miguel assumed that Judge Johnson's prior ruling that Cecilia's interest in the home was separate due to the quitclaim deed was "final and non-modifiable." Cecilia would therefore own her half of the property as separate property and the other half of the property held by Alfredo for the benefit of the community would be "equitably divided" by imposing a resulting trust on Cecilia's interest in Alfredo's half and requiring Cecilia to "quitclaim to [Miguel] as his separate property any interest she may have in the [Alfredo]'s property interest."

14

that scenario, the Court finds that [Miguel]'s calculations in that respect are valid and consistent with the credible evidence submitted in this dispute."

The trial court concluded: "In short, the Court reiterates that the home was intended to be a community asset and is therefore found to be a community asset subject to equal division through two resulting trusts: one from [Cecilia] to the community arising from the Quitclaim Deed, and the other from [Alfredo] related to the inclusion of his name on the title." The order directed Miguel's counsel to prepare a proposed order that set forth the "appropriate deeds to be executed by the parties as necessary to carry out the transfer of title under Scenario 1 accordingly, with a proviso that the Clerk of the Court may execute such documents upon any refusal or failure of any person to timely execute a relevant deed." No such proposed order appears in the record on appeal; nor is it referenced in the register of actions.

Cecilia filed a notice of appeal on March 12, 2020.

Alfredo, who was a joined party in the lawsuit, was not served with the clerk's notice of filing of notice of appeal. In addition, Cecilia did not serve Alfredo with the notice of appeal or the civil case information statement filed in this appeal. On May 20, 2022, this court issued an order to Cecilia directing her to show cause why the appeal should not be stayed to allow this court to give Alfredo notice of the appeal and an opportunity to file a respondent's brief. Cecilia filed a response to the order to show cause, acknowledging that Alfredo was a party in the trial court.

On June 2, 2002, this court issued an order staying the appeal for 45 days and directing the clerk of this court to send a copy of the June 2, 2022 order, the March 12, 2020 notice of appeal, and a copy of appellant's opening brief to Alfredo at the address listed for him in the reporter's transcript. The order granted Alfredo permission to appear in this appeal and file a respondent's brief within 30 days of the date of the order. This court did not receive a brief from Alfredo within this time period.

15

## II. DISCUSSION

Cecilia raises four claims on appeal challenging the January 17, 2020 order. First, she contends that Judge Hayes erred by redetermining issues of fact that had already been litigated and determined by Judge Johnson in July 2018 and included in the June 2019 judgment. Second, Cecilia asserts that Judge Hayes's findings were the product of an improper motion for reconsideration. Third, Cecilia contends the trial court erred in finding that Miguel had an ownership interest in the home notwithstanding the "valid interspousal transfer deed" (i.e., the quitclaim deed) he executed at the time of the purchase of the home. Fourth, Cecilia maintains the trial court erred in determining there was a resulting trust in favor of Miguel. Based on these errors, she requests that we reverse the judgment with direction to set aside the January 17, 2020 order, to enter judgment showing she is the "sole owner" of the home and to conduct a retrial limited to what rights Miguel has under the *Moore/Marsden* rule.

Miguel and Alfredo have not participated in this appeal. We therefore "decide the appeal on the record, the opening brief, and any oral argument" to determine if prejudicial error occurred. (Cal. Rules of Court, rule 8.220(a)(2); *In re Bryce C.* (1995) 12 Cal.4th 226, 232–233.)

A. *Appealability*

We turn first to the question of our jurisdiction.

"The existence of an appealable judgment is a jurisdictional prerequisite to an appeal." (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.) To verify appellate jurisdiction over the appeal taken from the January 17, 2020 order, styled as "Further Order After Submission" (some capitalization omitted), this court issued an order to show cause why the appeal should not be dismissed as premature and/or taken from a nonappealable order.

Having independently reviewed the record on appeal and considered Cecilia's response to our order to show cause on the issue, we are satisfied that the January 17,

16

2020 order determined the rights of the parties and disposed of the substantive issue in the case related to the character and division of the home, leaving none for future adjudication.

It is not the form of the order but its " 'substance and effect . . . which is determinative.' " (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698 (*Griset*).) While the order contemplated some further action by counsel—specifically by directing Miguel's counsel to prepare a proposed order that set forth the "appropriate deeds to be executed by the parties"— the order does not indicate any further judicial action on the part of the court that is " 'essential to a final determination of the rights of the parties.' " (*Id.* at p. 698.) We decide the January 17, 2020 order thus constituted the final and appealable judgment in this matter, and we have jurisdiction over this appeal. (Code Civ. Proc., §§ 577, 904.1, subd. (a); see *Dhillon v. John Muir Health* (2017) 2 Cal.5th 1109, 1115.)

B. *Authority of Judge Hayes to Reconsider Judge Johnson's Findings*

We turn next to Cecilia's claim that Judge Hayes violated the principle that one trial judge may not overrule another. We understand Cecilia to contend that Judge Hayes lacked the authority to modify the prior determinations made by Judge Johnson (later embodied in the judgment on reserved issues) that the home was Cecilia's separate property and that Cecilia had rebutted the presumption of undue influence associated with the quitclaim deed.

We agree with Cecilia that one trial court judge cannot generally overrule another. (See *Paul Blanco's Good Car Co. Auto Group v. Superior Court* (2020) 56 Cal.App.5th 86, 101.) As stated by a panel of this court: "Generally, one trial court judge may not reconsider and overrule an interim ruling of another trial judge. [Citations.] 'This principle is founded on the inherent difference between a judge and a court and is designed to ensure the orderly administration of justice. "If the rule were otherwise, it would be only a matter of days until we would have a rule of man rather than a rule of

17

law." ' " (*In re Marriage of Oliverez* (2015) 238 Cal.App.4th 1242, 1248 (*Oliverez*).) However, this general rule is subject to certain "narrow exceptions." (*Ibid.*) These exceptions include when the prior judge is unavailable to reconsider the motion, or when "the facts have changed or when the judge has considered further evidence and law." (*Ibid.*)

We conclude that Judge Hayes did not exceed his authority in making the challenged determinations. Consideration of new evidence is one of the established circumstances for when a trial court may overrule a prior judge's order. (*Oliverez, supra*, 238 Cal.App.4th at p. 1248.) That is what occurred here. Indeed, when reconsidering the rulings made by Judge Johnson, Judge Hayes specifically noted that he had heard new evidence.

When Judge Johnson gave her statement of decision in July 2018, Alfredo was not yet a party in the proceedings. It is undisputed that Judge Hayes heard new evidence in the form of the testimony of Alfredo about his involvement in the home's purchase to assist his brother Miguel, as well as additional testimony from Miguel and Cecilia. Indeed, in the context of a different argument, Cecilia acknowledges that Judge Hayes used "new evidence" to reach the challenged ruling.

Cecilia's objection to Judge Hayes's order focuses on the exception relating to the unavailability of the prior judge. She notes that this exception does not apply because Judge Johnson had stated at the conclusion of the July 30, 2018 hearing that she remained available. Even assuming Judge Johnson was available to "finish the case," as Cecilia maintains, that conclusion does not affect Judge Hayes's authority to issue a new order based on having heard additional evidence—an exception Cecilia neither acknowledges nor substantively addresses.

Cecilia also notes that the judgment on reserved issues incorporated Judge Johnson's decision. As we understand her argument, Cecilia seeks to challenge Judge

18

Hayes's characterization of Judge Johnson's decision as an interim or interlocutory ruling that was subject to modification. (See *Oliverez*, *supra*, 238 Cal.App.4th at p. 1248.)

We decide Judge Hayes did not err in treating Judge Johnson's decision as an interim order. The June 30, 2018 order issued by Judge Johnson, unlike the January 17, 2020 order underlying this appeal, did not finally dispose of the issue of the character and division of the home. While the findings made by Judge Johnson were included, as Cecilia points out, in a "judgment on reserved issues" it is the not the form of the order but its " 'substance and effect . . . which is determinative.' " (*Griset*, *supra*, 25 Cal.4th at p. 698.) Our high court has discussed in the criminal context the distinction of final orders from interim orders and focused the question on "the policies underlying the general concept of finality." (*People v. DeLouize* (2004) 32 Cal.4th 1223, 1232.) "The concept of finality 'rests upon the sound policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination.' " (*Ibid.*)

With these principles in mind, we agree with Judge Hayes that the orders made by Judge Johnson were interim in the sense that critical issues relating to the division of the home, particularly whether to establish a resulting trust, had yet to be adjudicated. Judge Johnson's ruling conveys a nonfinal resolution of the core issue before the court about how to make a final division of the property interests in the home.

Cecilia further argues that the order was the product of an "improper motion for reconsideration" (capitalization and bolding omitted) pursuant to Code of Civil Procedure section 1008. Cecilia's arguments are misplaced. The cases cited by Cecilia are not pertinent to the issue of whether Judge Hayes had the authority to reconsider Judge Johnson's determinations in light of the new evidence before him. As discussed *ante*, we conclude he had such authority. Cecilia's arguments as to Code of Civil Procedure section 1008 and the court's ability to reconsider its prior orders appear to have no

19

application here, where Miguel did not file a motion for reconsideration of Judge Johnson's ruling (but rather joined Alfredo into the litigation), and Judge Hayes was not in fact correcting his own prior error. Rather, following joinder of Alfredo into the marital dissolution proceeding, Judge Hayes heard new evidence and rendered a judgment that differed from Judge Johnson's interim ruling. The cases cited by Cecilia pertaining to Code of Civil Procedure section 1008 and the court's ability to reconsider its prior orders (as opposed to orders of other judicial officers) do not undermine Judge Hayes's actions.

On this record, we reject Cecilia's challenges to Judge Hayes's authority to reconsider Judge Johnson's prior order.

C. *Effect of Quitclaim Deed*

We turn next to Cecilia's claim challenging Judge Hayes's treatment of the quitclaim deed. Cecilia asserts that Judge Hayes erred by failing to give effect to the quitclaim deed and by characterizing the home as community property.

### 1. General Principles

"In a marital dissolution proceeding, a court's characterization of the parties' property—as community property or separate property—determines the division of the property between the spouses." (*In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1399.) Family Code section 760 sets forth the presumption that property acquired during a marriage while domiciled in California is community property. This presumption " 'is perhaps the most fundamental principle of California's community property law,' reflecting the ' "general theory . . . that the husband and wife form a sort of partnership, and that property acquired during the marriage by the labor or skill of either belongs to both." ' " (*In re Brace* (2020) 9 Cal.5th 903, 914 (*Brace*).)

However, "[s]tatutory exceptions to the community property presumption explicitly provide for separate property treatment." (*Brace*, *supra*, 9 Cal.5th at p. 914.) Relevant here, "for property acquired on or after January 1, 1985, married persons may

20

change — i.e., transmute — the character of property from community to separate, or vice versa, if the transmutation is 'made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.' (Fam. Code, § 852, subd. (a); see *id.*, subd. (e).)" (*Ibid.*) The Legislature enacted the "present-day transmutation statutes" seeking "to curb the risk of fraud, undue influence, and litigation arising from informal agreements between spouses that purported to change the character of property." (*Id.* at p. 926.)

Family Code section 852, subdivision (a) (hereafter section 852(a)), states that "[a] transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." (§ 852(a).) Under this statute, "[t]o effectuate a valid transmutation, there must be some writing by the owner 'contain[ing] on its face a clear and unambiguous expression of intent to transfer an interest in the property, independent of extrinsic evidence.' " (*In re Marriage of Begian & Sarajian* (2018) 31 Cal.App.5th 506, 513.)

" '[W]hether a valid transmutation of property has taken place depends not only on compliance with the provisions of section 852 but also upon compliance with rules governing fiduciary relationships.' " (*In re Marriage of Wozniak* (2020) 59 Cal.App.5th 120, 130 (*Wozniak*).) In consequence, "[b]eyond the requirements of section 852, a transmutation of property between spouses must also comport with special rules pertaining to persons occupying a confidential relationship with one another. '[Family Code] [S]ection 721, subdivision (b) provides in part that "in transactions between themselves, a husband and wife are subject to the general rules governing fiduciary relationships which control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other." In view of this fiduciary relationship, "[w]hen an interspousal transaction advantages one

21

spouse, '[t]he law, from considerations of public policy, presumes such transactions to have been induced by undue influence.' " ' " (*Ibid.*)

We now turn to Cecilia's contention that the trial court erred in failing to give effect to the quitclaim deed.

### 2. Analysis

We "begin our analysis mindful that an 'order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' " (*In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 421.) In general, a trial court's " 'findings on the characterization and valuation of assets in a dissolution proceeding are factual determinations which are reviewed for substantial evidence.' " (*Wozniak*, *supra*, 59 Cal.App.5th at p. 130.) " 'However, when the resolution of the issue "'requires a critical consideration, in a factual context, of legal principles and their underlying values,' " the issue is a mixed question of law and fact in which legal issues predominate, and de novo review applies.' " (*Ibid.*) We agree with Cecilia that the question before us—the effect of the quitclaim deed signed by Miguel in 2011—is predominantly legal and therefore subject to de novo review.

The quitclaim deed contains the phrase "interspousal transfer" and states that for valuable consideration Miguel "hereby remise(s), releases(s) and forever quitclaim(s) to [Cecilia], a married woman" the home "as her sole and separate property" (capitalization omitted). The quitclaim deed further identifies Miguel as the husband of Cecilia. The deed states that "This Deed is given to establish of record that the undersigned Grantor [i.e., Miguel], spouse of the Grantee herein [i.e., Cecilia], acquired no interest to said property by reason of the Deed to said Grantee recording concurrently herewith and the interest acquired by said Grantee is his/her sole and separate property."

Based on this plain and unambiguous language, the quitclaim deed constitutes an express declaration of transmutation that satisfies the statutory requirement for transmutation under section 852(a). (See *In re Marriage of Kushesh & Kushesh-Kaviani*

(2018) 27 Cal.App.5th 449, 451 (*Kushesh*).)  Further, in deciding the validity of the quitclaim deed, "we interpret the written instruments independently, without resort to extrinsic evidence." (*In re Marriage of Starkman* (2005) 129 Cal.App.4th 659, 664; see also *Estate of MacDonald* (1990) 51 Cal.3d 262, 272.)  As our Supreme Court has stated, "[Family Code] section 852 blocks efforts to transmute marital property based on evidence—oral, behavioral, or documentary—that is easily manipulated and unreliable. . . . Though no particular terminology is required [citation], the writing must reflect a transmutation on its face, and must eliminate the need to consider other evidence in divining this intent." (*In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1106.)

Nevertheless, the conclusion that the quitclaim deed satisfies the transmutation requirements set forth in section 852(a), does not end our inquiry.  Whenever there is a transfer from one spouse to another, a rebuttable presumption of undue influence arises if the transaction gives one spouse an unfair advantage over the other.  (See Fam. Code, § 721, subd. (b).)

"It is settled that the predicate for applying a presumption of undue influence in an interspousal transaction is that one spouse has obtained an advantage over the other in the transaction. [Citations.]  The presumption of undue influence is regularly applied in marital transactions in which one spouse has deeded property to the other." (*In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 730 (*Burkle*).)  The burden, therefore, falls on Cecilia to rebut the presumption of undue influence by a preponderance of the evidence.  (See *In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 631 (*Mathews*).)

" ' "When a presumption of undue influence applies to a transaction, the spouse who was advantaged by the transaction must establish that the disadvantaged spouse's action 'was freely and voluntarily made, with a full knowledge of all the facts, *and with a complete understanding of the effect of*' the transaction." ' " (*In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 344, italics added (*Fossum*).)  The spouse seeking to

overcome the presumption of undue influence must do so by a preponderance of the evidence. (*Mathews*, *supra*, 133 Cal.App.4th at p. 631.)

The order from which Cecilia appeals (Judge Hayes's January 17, 2020 order) does not expressly address undue influence. However, Judge Hayes's December 2, 2019 order, referenced in the appealed-from order, declares that "the facts support a finding that [Cecilia] cannot overcome the presumption of undue influence" given that there was "an agreement that the home was going to be that of [Cecilia] and [Miguel]."

We review Judge Hayes's implied factual finding that Cecilia failed to rebut the presumption of undue influence for substantial evidence. (See *Kushesh*, *supra*, 27 Cal.App.5th 449 at p. 456.) We decide substantial evidence in the record supports Judge Hayes's implied finding that Cecilia cannot overcome her burden of rebutting undue influence. In particular, the record contains no evidence that Miguel had " ' " 'a complete understanding of the effect of' the transaction" ' " (*Fossum*, *supra*, 192 Cal.App.4th at p. 344) when he signed the quitclaim deed.

Miguel testified he was unable to read English in 2011. The deed is written in English, and there is no evidence it was translated to Miguel or explained to him. Further, Miguel believed that he and his wife owned the home, even though he understood he was not going to be on the title. Either the title company or bank required that Miguel sign the quitclaim deed to buy the home, but Miguel believed that he and Cecilia would both own the home together. Cecilia herself acknowledged she did not understand the legal import of the quitclaim deed at the time of the home's purchase, and she also believed that her family (including Miguel) owned the home when they purchased it.

The quitclaim deed does not contain an attestation that Miguel had read or understood the terms of the quitclaim deed, let alone that he understood its legal ramifications on his marital property interests. (Cf. *In re Marriage of Lund* (2009) 174 Cal.App.4th 40, 56 [spouse had signed attestation to his understanding of an interspousal

agreement].) The evidence amply supports Judge Hayes's implied finding that Cecilia failed to carry her burden that Miguel's signing of the quitclaim deed was "freely and voluntarily made with full knowledge of all the facts and with a complete understanding of its effect of making the house [the other spouse's] separate property." (*Fossum*, *supra*, 192 Cal.App.4th at p. 345.)

The record here stands in contrast to cases where courts have upheld a finding of lack of undue influence. For example, in *Mathews*, the Court of Appeal held substantial evidence supported the trial court's conclusion that the husband had rebutted the presumption where his wife had signed a quitclaim deed because "[t]he purchase of the residence was not dependent on Wife signing the quitclaim deed" but was done to obtain a lower interest rate on the mortgage (*Mathews*, *supra*, 133 Cal.App.4th at p. 631). Further, the wife "was above average in her English skills and competent to complete a college certification course taught in English." (*Id.* at p. 632.) Moreover, unlike in cases where the spouses were represented by counsel, the record contains no evidence that anyone assisted Miguel in understanding the quitclaim deed. (Cf. *Burkle*, *supra*, 139 Cal.App.4th at p. 739 [noting evidence supported the wife's "understanding of the effect of the agreement, the recitals in the agreement, her representation by a number of attorneys, including family law specialists, and her own and her attorney's certifications leave no doubt that she understood the legal effect of the agreement"].)

Therefore, the trial court did not err when it declined to characterize the house as Cecilia's separate property due to the quitclaim deed.

D. *Resulting Trust as to Alfredo's Share*

Cecilia asserts error as to one of the resulting trusts imposed by Judge Hayes. We understand her challenge to be directed at the aspect of the order that imposed a resulting trust on Alfredo's share of the home in favor of the community, rather than solely in

favor of Cecilia.[10]  Cecilia asserts that "the only finding that is consistent with the rulings of Judge Johnson and the law [is] that there is a resulting trust wherein the subject property is held in joint title by [Alfredo] in favor of [Cecilia]."

The January 17, 2020 order imposed two resulting trusts.  The trial court described the trusts as "one from [Cecilia] to the community arising from the Quitclaim Deed, and the other from [Alfredo] related to the inclusion of his name on title."  While the order's details of the trust are limited, the trial court adopted "Scenario 1," under which Alfredo would hold his interest "in trust for the benefit of the community, husband and wife" and the trial court would order Alfredo to convey his interest to Cecilia and Miguel.

Cecilia asserts, and we agree, that the existence and terms of a resulting trust are reviewed for substantial evidence.  " 'Whether the evidence to prove the existence of the trust is clear, satisfactory and convincing "is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal." [Citations.]  Likewise, in such cases the credibility and weight of the evidence are exclusively for the trial court.' " (*Islas v. Islas* (1963) 213 Cal.App.2d 412, 416.)

Applying the above principles, we decide that substantial evidence supports the trial court's decision to impose a resulting trust on Alfredo's share.  Alfredo testified that he intended to help his brother and had not contributed to the home other than providing a loan related to the down payment that was subsequently repaid.  By contrast, there is no evidence to reflect that Cecilia is the "sole owner" of the home as she appears to assert or that Alfredo only intended to benefit Cecilia (and not Miguel) when Alfredo participated in the purchase of the family home.

---

[10] Cecilia's briefing at times refers to a "constructive trust" rather than a resulting trust.  We assume she means a resulting trust, as the underlying order on appeal did not impose a constructive trust.  Moreover, in her discussion of the trust, Cecilia refers to an individual she identifies as "Morales," which we understand as referring to Miguel.

Cecilia's briefing does not dispute Alfredo's testimony, and she provides no authority supporting her claim of error as to the resulting trust based on Alfredo's share in the home. While she points to Judge Johnson's statement of decision in 2018, she concedes that Judge Johnson did not decide the resulting trust issue. Therefore, Judge Johnson's statement does not assist her. Moreover, to the extent Cecilia's arguments relating to the resulting trust overlap with her contentions that Judge Hayes exceeded his authority or improperly invalidated the quitclaim deed signed by Miguel, we reject her arguments for the reasons we have already explained.

## III. DISPOSITION

The January 17, 2020 order is affirmed.

_____
                Danner, J.


WE CONCUR:




_____
Bamattre-Manoukian, Acting P.J.




_____
Wilson, J.




**H047972**
*Farfan v. Medrano*