Filed 11/19/24  Marriage of Unterberger CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re Marriage of LAWRENCE D. and STEPHANIE MARIE UNTERBERGER. | 2d Civ. No. B329259 (Super. Ct. No. D395169) (Ventura County) |
| LAWRENCE D. UNTERBERGER, Respondent, v. STEPHANIE MARIE UNTERBERGER, Appellant. | |

Stephanie Marie Unterberger (Wife) appeals from the judgment dissolving her marriage to Lawrence D. Unterberger (Husband).  The judgment was entered following a trial on the division of the parties' property.  Wife contends the trial court erroneously characterized the Riverside County home as

community property.  Husband deeded the home to Wife "as her sole and separate property."  But the court concluded the deed is invalid because Wife failed to rebut a presumption that she had exercised undue influence over Husband.  Wife also contends the court erroneously ruled that, pursuant to Family Code section 2640, subdivision (b), Husband is entitled to reimbursement of an $87,000 gift that he had made to her from his separate funds.[1]  Finally, for the first time in her reply brief, Wife claims Husband committed mortgage fraud.  We affirm.

<em>Factual Summary</em>

The record on appeal consists of a clerk's transcript and a settled statement in lieu of a reporter's transcript.  The settled statement summarizes Husband's and Wife's testimony at the trial.  "In accordance with our substantial evidence standard of review, we summarize the facts in a light most favorable to the judgment, drawing all reasonable inferences and resolving all conflicts in favor of [Husband]."  (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 522, fn. 1.)

The parties married in June 2015 and separated in July 2019.  Husband testified as follows: "Around July 2015, we discussed buying something together that would be a retirement home.  We did not discuss that only one of us would own the house.  We talked about buying a home together and jointly."

"We made an offer on [a] home . . . ."  "Wife and I started the purchase process of obtaining the financing, downpayment, and appraisals.  My belief and understanding was that the house was to be owned jointly, and not separate[ly]."

"When we started the process of obtaining financing, we applied for loans . . . together. . . .  I couldn't qualify to get a

---

[1] All statutory references are to the Family Code.

2

loan . . . . So, it was decided that we would put the loan only in Wife's name. At the time I was paying alimony and child support to my first wife, so Wife asked me to put [the home] in her name. So, we put it in her name to insulate it from my ex-wife being able to put liens on the property . . . for child support or spousal support." "At the time of marriage [to Wife], I did not have support arrears or judgments against me. . . . I was paying child support and spousal support. I was never in arrears."

"I absolutely thought the home would be owned jointly. We discussed eventually putting the house in a trust, for passing it on to our descendants. That we would set up a trust and half would then go to Wife's mom and half would go to my children. This was Wife's idea."

From his separate funds, Husband made the $87,000 downpayment for the purchase of the home. In September 2015 Husband signed a document entitled, "Gift Letter." It states: "This letter confirms that I . . . gave [Wife] a monetary gift in the amount of $87[,]000." "The entire amount . . . is a gift and does not need to be paid back to me."

Husband testified: "The loan agent asked for a letter stating that I was gifting the downpayment. The loan agent told us what the letter needed to say in order for the loan to be approved. I did not prepare the letter, but I signed the letter after it was prepared and after I reviewed it. At no time did I intend to give the downpayment to [Wife] as a gift." "[I]t was my understanding that the gift letter had to be written and signed or the loan wouldn't be processed."

In September 2015 the sellers of the home deeded it to Wife "as her sole and separate property." "About a month after the purchase of the home, there was a document [entitled]

3

'Interspousal Transfer Grant Deed' [(hereafter ITGD)]. We signed this document on October 8, 2015. . . . The only discussion we had was to put the house in Wife's name so my ex-wife wouldn't be able to put a lien on it. After that we talked about eventually putting the house in a trust. After those documents were signed, we treated the house as a jointly owned place."

The ITGD states that, for a valuable consideration, Husband grants the home to Wife "as her sole and separate property." The deed continues, "It is the express intent of the Grantor . . . to convey all right, title and interest of the Grantor, community or otherwise, in and to the herein described property to Grantee as []her sole and separate property."

*Trial Court's Judgment*

There is no statement of decision. In its judgment the trial court said, "[T]here was conflicting testimony regarding the parties['] intent in purchasing the property, but [the trial court] finds the more credible evidence to be that the parties intended to purchase a house that would eventually become their retirement home." The trial court ruled "that considering the fiduciary relationship between the parties as married spouses, [W]ife failed to meet the burden to overcome the presumption of undue influence." Therefore, "the [ITGD] must be set aside and a new deed be issued to . . . effectuate the joint ownership of the property [as the parties' community property]."

As to Husband's alleged gift of the $87,000 downpayment, the court said: "Based upon the evidence presented, the [trial] court finds that [H]usband did not, despite the existence of the gift letter required as a condition of the loan to [W]ife, make a gift to [W]ife in the sum of $87,000. The [trial] court finds that the down payment was [H]usband[']s separate property . . . and

4

therefore [H]usband is entitled to Family Code § 2640 reimbursement of the down payment . . . in full, in the sum of $87,000."

*The Doctrine of Implied Findings*

Because there is no statement of decision, the doctrine of implied findings applies. (*A.G. v. C.S.* (2016) 246 Cal.App.4th 1269, 1281-1282.) "The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment. [Citation.] The doctrine is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)

*The Evidence is Sufficient to*
*Raise a Presumption of Undue Influence*

"Section 760 states: 'Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property.' Under this section, 'there is a general presumption that property acquired during marriage by either spouse other than by gift or inheritance is community property unless traceable to a separate property source.'" (*In re Marriage of Rossin* (2009) 172 Cal.App.4th 725, 731.)

Because the home was acquired during the parties' marriage, it is presumed to be community property. But Husband's ITGD "meets the requirements for a transmutation of the character of marital property [from community to separate

5

property] under Family Code section 852." (*In re Marriage of Kushesh & Kushesh-Kaviani* (2018) 27 Cal.App.5th 449, 451 (*Kushesh*).) Section 852, subdivision (a) provides, "A transmutation of real . . . property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected."

Husband's signing of the ITGD is not dispositive of the matter. "[W]henever there is a transfer from one spouse to another a rebuttable presumption of undue influence arises if the transaction gives one spouse an unfair advantage over the other." (*Kushesh, supra*, 27 Cal.App.5th at p. 456.) This presumption is based on the fiduciary relationship between spouses. "[S]pouses occupy a confidential and fiduciary relationship with each other. [Citation.] The nature of this relationship 'imposes a duty of the highest good faith and fair dealing' on each spouse as to any interspousal transaction." (*In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 343-344 (*Fossum*).)

Wife claims, "The presumption of undue influence should not arise here because [Husband] was advantaged by the transaction." (Bold omitted.) Wife argues that the "transaction[] provided [Husband] security knowing that even if he failed to meet his [spousal and child support] obligations, he would have a stable place to live and that the value of the home could not be depreciated in any action related to his previous marriage."

We review for substantial evidence the trial court's implied finding that Husband was unfairly disadvantaged by the ITGD. (*Estate of Auen* (1994) 30 Cal.App.4th 300, 311-312, superseded by statute on other grounds as stated in *Rice v. Clark* (2002) 28 Cal.4th 89, 97-98; *In re Marriage of Burkle* (2006) 139

6

Cal.App.4th 712, 734 ["Whether an interspousal transaction gives one spouse an unfair advantage is a question for the trier of fact"].) "Under the substantial evidence standard, '"[o]ur review is limited to a determination whether there is any substantial evidence, contradicted or uncontradicted, that supports the finding. [Citation.] In so reviewing, all conflicts must be resolved in favor of [the prevailing party] and all legitimate and reasonable inferences must be indulged to uphold the finding."' [Citation.] '[W]e examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference.' [Citation.] We do 'not reweigh the evidence, evaluate the credibility of witnesses or indulge in inferences contrary to the findings of the trial court. [Citations.] The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts.'" (*In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 470.)

Putting the home in Wife's name could benefit the parties by shielding it from liens for unpaid child or spousal support, but the benefit was speculative. Husband testified that he was "never in arrears" on his support obligations. Substantial evidence supports the trial court's implied finding that Husband was unfairly disadvantaged by the permanent loss of his community property rights to the home despite paying the $87,000 downpayment from his separate funds. The trial court therefore properly applied the presumption of undue influence to the transaction between the parties.

*Substantial Evidence Supports Court's Finding that*
*Wife Did Not Rebut the Presumption of Undue Influence*

"""When a presumption of undue influence applies to a transaction, the spouse who was advantaged by the transaction must establish that the disadvantaged spouse's action 'was freely and voluntarily made, with full knowledge of all the facts, and with a complete understanding of the effect of' the transaction." [Citation.]' [Citation.] The advantaged spouse must show, by a preponderance of evidence, that his or her advantage was not gained in violation of the fiduciary relationship. [Citation.] '"The question 'whether the spouse gaining an advantage has overcome the presumption of undue influence is a question for the trier of fact, whose decision will not be reversed on appeal if supported by substantial evidence.'". . .'" (*Fossum*, *supra*, 192 Cal.App.4th at p. 344.)

Substantial evidence supports the trial court's implied finding that Husband did not '"freely and voluntarily"' sign the ITGD '"with full knowledge of all the facts, and with a complete understanding of the effect of' the transaction."' (*Fossum*, *supra*, 192 Cal.App.4th at p. 344.) Husband testified that the parties "talked about buying a home together and jointly." Title to the house was placed in Wife's name because Husband did not qualify for a loan and "Wife asked [him] to put it in her name" to "avoid potential liens for child support or spousal support." Husband "absolutely thought the home would be owned jointly." The parties "discussed eventually putting the house in a trust, for passing it on to [their] descendants. That [they] would set up a trust and half would then go to Wife's mom and half would go to [Husband's] children." The trust "was Wife's idea." Based on Husband's testimony, the trial court could have reasonably found

8

that Wife had misled him into believing that her sole-ownership title was a temporary expedient that would be corrected at a later time.

"Hence, [Wife] failed to rebut [the] presumption of undue influence. The house is community property." (*Fossum, supra,* 192 Cal.App.4th at p. 346.)

### *Husband's Right to Reimbursement of $87,000 Downpayment Made from His Separate Funds*

The parties do not dispute that the $87,000 downpayment came from Husband's separate funds. Wife claims Husband "is not entitled to reimbursement for the $87,000 down payment because he executed two documents [the ITGD and the gift letter] indicating that the payment was a gift." (Bold omitted.)

"[S]ection 2640, subdivision (b) provides in part: 'In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source.' . . . 'This provision "creates a substantive right of reimbursement that can be relinquished only by an express written waiver by the contributing spouse. [Citation.] 'In the absence of such a written waiver the donative intent of the contributing spouse does not bar reimbursement. . . .'"'" (*In re Marriage of Motiska & Ford* (2023) 96 Cal.App.5th 1291, 1299-1300, italics omitted.)

Section 2640 "encourages married persons to freely and without reservation contribute their separate property assets to benefit the community, and alleviates the need for spouses to

negotiate with each other during marriage regarding continuing reimbursement rights. Under this interpretation, section 2640 protects the general expectations of most people in marriage, i.e., that spouses will be reimbursed for significant monetary contributions to the community should the community dissolve." (*In re Marriage of Walrath* (1998) 17 Cal.4th 907, 919.)

The issue is whether Husband waived his section 2640 reimbursement right by signing the ITGD and the gift letter. "'Waiver requires a voluntary act, knowingly done, with sufficient awareness of the relevant circumstances and likely consequences. [Citation.] There must be actual or constructive knowledge of the existence of the right to which the person is entitled. [Citation.]' [Citation.] There must be '. . . an actual intention to relinquish it or conduct so inconsistent with the intent to enforce that right in question as to induce a reasonable belief that it has been relinquished.'" (*In re Marriage of Perkal* (1988) 203 Cal.App.3d 1198, 1203.)

"Generally, the determination of . . . waiver . . . is a question of fact, and the trier of fact's finding is binding on the appellate court [if supported by substantial evidence]. [Citations.] When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling." (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319.)

Irrespective of whether we apply de novo or substantial evidence review, the result is the same: Husband did not waive his section 2640, subdivision (b) right of reimbursement. The ITGD and the gift letter do not mention Husband's statutory reimbursement right if the marriage is later dissolved. There is

no evidence that Husband was aware of this right when he signed the documents.

*Alleged Mortgage Fraud*

In her reply brief Wife claims that Husband raised in his respondent's brief "the argument that [he] signed the gift letter as a means to commit mortgage fraud." The alleged fraud is based on the statement in respondent's brief that Husband's $87,000 downpayment "is not a free and voluntary gift, but an orchestration of paperwork to close an[] escrow." Wife asserts that, if Husband committed mortgage fraud, he "had unclean hands in this transaction" and should not be permitted to benefit from his misconduct.

Wife "forfeited the issue because [s]he has failed to present meaningful legal and factual analysis, with supporting citations to pertinent authority and the record, on why" and how Husband committed mortgage fraud. (*Phillips v. Campbell* (2016) 2 Cal.App.5th 844, 853.)

Wife also forfeited the issue because she failed to raise it in her opening brief. Wife had the opportunity to raise it earlier because Husband testified that, even though he did not intend to make a gift to Wife, he had signed the gift letter so that Wife would receive the loan: "The loan agent asked for a letter stating that I was gifting the downpayment. The loan agent told us what the letter needed to say in order for the loan to be approved. . . . I signed the letter after it was prepared and after I reviewed it. At no time did I intend to give the downpayment to her as a gift." "[W]e do not consider points raised for the first time in the reply brief absent a showing of good cause for the failure to present them earlier. [Citations.] This rule is based on considerations of fairness—withholding a point until the closing brief deprives the

11

opposing party of the opportunity to file a written response unless supplemental briefing is ordered." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

*Disposition*

The judgment is affirmed. Husband shall recover his costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, Acting P. J.


We concur:


BALTODANO, J.


CODY, J.

Charmaine H. Buehner, Judge

Superior Court County of Ventura

_____

Law Offices of Evan D. Williams and Evan D. Williams, for Appellant.

Law Offices of Michael D. Kwasigroch and Michael D. Kwasigroch, for Respondent.