Filed 7/23/25  Marriage of Broady CA4/1

### NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of MARIA and RICHARD BROADY. | D083961 |
| MARIA BROADY, | |
| Respondent, | (Super. Ct. No. 21FL002468S) |
| v. | |
| RICHARD BROADY, | |
| Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, James T. Atkins, Commissioner.  Affirmed.

Richard Broady, in pro. per., for Appellant.

Cage & Miles, and John T. Sylvester, for Respondent.

In this marital dissolution, Richard Broady appeals an order

determining the house and dog constitute Maria Broady's separate property.[1]

---

1    First names are used to distinguish between the parties who share a last name; it is not meant as disrespect.

Richard also asks to be reimbursed for his contribution to the home, and for us to find the family court was biased. Maria argues the appeal is premature and requests a judgment nunc pro tunc to save the appeal.

We conclude: (1) we have jurisdiction to review this matter; (2) Richard transmuted the house to Maria's separate property; (3) Richard forfeited any claims for reimbursement; (4) he gifted the dog to Maria as her separate property; and (5) there is no evidence of judicial bias. Accordingly, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Maria and Richard Broady married in May 2015. In May 2019, they began the process to buy a home. By October 2019, Maria wanted to end the relationship and the house purchase. She offered to reimburse Richard for his upgrade deposits for the home. Richard declined the reimbursements and indicated to Maria she should complete the purchase by herself. Richard gave Maria two "gift letter" forms, which he executed in December 2019. In December 2019, Richard also executed an interspousal transfer grant deed (ITGD) in Maria's favor, giving her the home as her sole and separate property.

During the marriage, Richard purchased a dog. He surprised Maria with the dog, saying, "I got you a dog." He referred to the dog as "your dog" or "your pup" when texting Maria. Veterinarian records listed Maria as the owner. Grooming records reflected contact information for both parties. Two records purportedly providing vet care did not indicate ownership.

Years after the house purchase, Maria filed a petition for dissolution on March 22, 2021, which lists the date of separation as September 1, 2019. Maria filed an amended petition for dissolution in April 2023, which lists the date of separation as July 2022. At the bifurcated dissolution trial on

2

March 7, 2024, both parties stipulated the date of separation was July 1, 2022. The court entered a judgment of dissolution on March 7, 2024.

At the trial on reserved issues regarding distribution of property, the court heard testimony from the parties and considered exhibits. The court found the home was Maria's separate property because Richard knowingly conveyed his property interest to her, free from undue influence. Richard did not argue he was entitled to reimbursements for his payments toward the home; nor did he produce any evidence to support such a claim. The court also found the dog was Maria's sole and separate property, as evidenced by Richard surprising Maria with the dog as a gift, Richard referring to the dog as Maria's, the dog residing with Maria per a domestic violence restraining order, and documentary indicia of ownership. The court issued a signed minute order of its findings on March 25, 2024. The court reserved jurisdiction over the disposition of some other minor issues. Richard did not request review of these items, and we are not considering them.

DISCUSSION

I.

*Appealability*

Maria argues the March 25, 2024 family court judgment regarding the dog and house was not final at the time of appeal because judgment was not entered, and the notice of entry of judgment was not filed and served. She asks us to save the appeal by directing the family court to enter judgment nunc pro tunc.

We can only consider appeals from final orders, unless otherwise permitted by statute. (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 560.)

First, a judgment is final and thus appealable " ' "where no issue is left for future consideration except the fact of compliance or noncompliance with

3

[its] terms . . . ." [Citation.]' [Citation.] It is a judgment's substance, not its form or label, which determines whether it is final." (*Kaiser Foundation Health Plan, Inc. v. Superior Court* (2017) 13 Cal.App.5th 1125, 1138 (*Kaiser*).) An appeal lies from a judgment on issues that have been "severed from other remaining, separate and independent causes of action." (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 732 (*Morehart*).)

Second, Code of Civil Procedure[2] section 904.1, subdivision (a)(2), permits an appeal from an order issued after an appealable judgment.

Third, if an appellant files a notice of appeal after the judgment is rendered but before the judgment is entered, the appeal is valid and treated as filed after entry of judgment. (Cal. Rules of Court, rule 8.104(d)(1); *Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 655–657 (*Meinhardt*).)

Here, there is nothing left to litigate about the house and dog, except compliance with the terms of the order. (See *Kaiser, supra,* 13 Cal.App.5th at p. 1138.) Although the court reserved jurisdiction on some other matters, we may review the severed, separate, and independent issues that are on appeal. (See *Morehart, supra,* 7 Cal.4th at p. 732.) Because the findings regarding the house and dog are a final determination, the order is appealable under sections 577 and 904.1, subdivision (a).

Additionally, the judgment of dissolution was entered on March 7, with reserved issues. After this judgment, the family court ruled on the house and dog on March 25. Thus, the March 25 orders are final and appealable postjudgment orders that follow the March 7 dissolution judgment. (See *Morehart, supra,* 7 Cal.4th at p. 732; § 904.1, subd. (a)(2).) Thus, the order is appealable as a postjudgment order.

---

2      All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

4

Finally, although judgment on the house and dog was not entered, Richard filed his appeal after the family court issued a signed minute order that contained the court's final, substantive decision. (See *Kaiser, supra*, 13 Cal.App.5th at p. 1138 [substance, not form, of judgment determines finality].) We have the discretion to review an appeal that is technically premature in such a manner, and we exercise it here. (See Cal. Rules of Court, rule 8.104(d)(1); *Meinhardt, supra*, 16 Cal.5th at pp. 655–657.)

## II.

### *Property Division*

#### A. *Standard of Review*

We review a finding of whether property is separate or community for substantial evidence. (*In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 849.) "Substantial evidence" is evidence " 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and ' "substantial" proof of the essentials which the law requires in a particular case.' " (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1006.) "We must view the record in the light most favorable to the court's order, presume the existence of every fact the court could reasonably have deduced from the evidence, and resolve any conflicts in the evidence in favor of upholding the order." (*In re White* (2018) 21 Cal.App.5th 18, 29.) The family court weighs the evidence and determines credibility, and its findings are "binding and conclusive" to this court. (*In re Marriage of Hill & Dittmer* (2011) 202 Cal.App.4th 1046, 1051–1052.)

## B. *The House*

Richard contends the family court erred by deeming the house Maria's separate property because it did not properly evaluate the evidence of his payments toward the down payment, mortgage, and maintenance.

Under Family Code section 760, property acquired during marriage by a married person while domiciled in California is community property. However, a spouse may transmute community property to separate property by agreement or transfer, with or without consideration. (Fam. Code, § 850.) A valid transmutation of real property must be (1) made in writing (2) by an "express declaration," which is (3) "made, joined in, consented to, or accepted" by the disadvantaged spouse. (Fam. Code, § 852, subd. (a).) An ITGD satisfies these elements of Family Code section 852, subdivision (a). (*In re Marriage of Kushesh & Kushesh-Kaviani* (2018) 27 Cal.App.5th 449, 456.)

When a transaction benefits one spouse over the other, a presumption that the transaction was made by undue influence applies. (Fam. Code, § 721; *In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 344 (*Fossum*).) The advantaged spouse then has the burden to show, by a preponderance of the evidence, the transaction " 'was freely and voluntarily made, with full knowledge of all the facts, and with a complete understanding of the effects of' the transaction." (*Id.* at p. 344.)

Here, when Maria asked to end the relationship and house purchase, she offered to reimburse Richard for his contributions, which he declined. Rather, he executed two gift letters to Maria giving her the amounts he paid for upgrade deposits. Richard also executed an ITGD that granted Maria the home as her separate property. Richard did not dispute the authenticity of his signature on the ITGD. Instead, he argued he lacked the requisite understanding of what the ITGD would do to his property interest. He

6

believed only a quitclaim deed could have transmuted the home. He testified he first saw the ITGD the day he signed it and did not read it. However, Richard owned a business for 22 years, considered himself a savvy businessman, negotiated lengthy business contracts with clients, and had a variety of clients including well known corporations, the federal government, and professional athletes.

The family court found: (1) Richard did not testify he failed to understand the transaction, or he was precluded from using a lawyer, or his signing was involuntary; (2) the ITGD contained "clear and unequivocal" language granting Maria the home as her sole and separate property; and (3) Richard executed the gift letters and ITGD "freely and voluntarily, with full knowledge of all the facts and with a complete understanding of the effect of the transfer."

We defer to the family court's findings of credibility and determination of the facts. (See *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 365.) The court determined Maria's testimony was more credible and reliable than Richard's because Maria was "consistent and detailed," while Richard was "at times inconsistent lacking in detail."

Thus, substantial evidence shows the ITGD satisfied the legal requirements of a document purporting to convey property, it was in writing and clear as to the effect. Substantial evidence also shows there was no undue influence when Richard transmuted the home to Maria's separate property because he knew what he was signing; he signed it of his own free will; and he had the business acumen and experience to understand the consequences of signing a legal document.

7

## C. *Family Code Section 2640 Requests*

Richard requests a distribution of the house that "recognize[s] the joint financial contributions of both parties." In the alternative, he asks to be reimbursed for his contributions.

For the first time on appeal and in his reply brief, Richard cites Family Code section 2640. Family Code section 2640 states a party shall be reimbursed for contributions to community property unless the party has made a written waiver or there has been a transmutation. The contribution must be traced back to a separate property source. (*Ibid.*)

Generally, issues not raised in the trial court cannot be asserted for the first time on appeal. (*Saurman v. Peter's Landing Property Owner*, LLC (2024) 103 Cal.App.5th 1148, 1167.) Moreover, we do not consider issues raised for the first time in a reply brief. (See *In re Marriage of Cohen* (2023) 89 Cal.App.5th 574, 583.) Thus, we consider this contention forfeited.

Even if Richard had not forfeited this issue, we would deny his contention on the merits. First, the record shows no indication Richard traced *any* of his contributions as being from separate property as required by Family Code section 2640, subdivision (b). Thus, he has not met his burden. Second, Maria offered reimbursement of his upgrade deposits, but Richard declined the offer, indicating some form of waiver. Third, he executed two gift letters and an ITDG freely, voluntarily, and knowingly, indicating transmutation. (See Fam. Code, § 2640, subd. (c).) This substantial evidence leads us to agree with the family court's determination that Richard is not entitled to reimbursement for payments he made toward the home.

D. *The Dog*

Richard argues the family court erroneously awarded the dog to Maria because he purchased the dog with his own money, without Maria's knowledge. Thus, the dog is his separate property. We disagree.

"Property . . . acquired during marriage by gift . . . is separate property." (Cal. Const., art. I, § 21.) "Separate property of a married person includes . . . [a]ll property acquired by the person after marriage by gift . . . ." (Fam. Code, § 770, subd. (a)(2).) Additionally, Family Code section 2605, subdivision (b), allows the court to assign joint or sole ownership of a pet, taking into consideration the care of the pet.

Maria testified Richard surprised her with the dog and said, "I got you a dog." The family court considered several texts from Richard to Maria referring to the dog as "your dog" or "your pup." Veterinary bills identified Maria as the owner. Grooming records showed both parties names and numbers. Two records purportedly providing vet care did not clarify ownership. The family court took judicial notice of the domestic violence restraining order that placed the dog in Maria's sole care and custody.

These legally significant facts, found credible by the family court, constitute substantial evidence of Richard gifting the dog to Maria. (See *Conservatorship of O.B., supra*, 9 Cal.5th at p. 1006.) He held out the dog as hers, and Maria took primary care of the dog. Thus, the dog is Maria's separate property.

III.

*Judicial Bias*

Richard alleges judicial bias, specifically as a violation of "due process under the Fourteenth Amendment and California law," as articulated in his

9

opening brief.[3]  He claims the family court was prejudiced against him because it improperly considered a previously granted domestic violence restraining order protecting Maria and the dog from him.  He also states Maria's testimony was "accepted without scrutiny," while his was disregarded.

" '[W]hile a showing of actual bias is not required for judicial disqualification under the due process clause, neither is the mere appearance of bias sufficient.  Instead, based on an objective assessment of the circumstances in the particular case, there must exist "the probability of actual bias on the part of the judge or decisionmaker [that] is too high to be constitutionally tolerable."  [Citations.]' " (*Peoples, supra*, 62 Cal.4th at p. 788.)  The United States Supreme Court requires "extreme facts" to meet this standard.  (*Caperton v. A. T. Massey Coal Co.* (2009) 556 U.S. 868, 887–888.)  Additionally, "[m]ere expressions of opinion, based on observation of the witnesses and evidence, do not demonstrate judicial bias." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589 (*Schmidt*).)  "Finding a witness believable does not demonstrate bias.  It demonstrates judgment." (*Id*. at p. 592.)

Richard relies on *Catchpole v. Brannon* (1995) 36 Cal.App.4th 237 (*Catchpole*) to support his claim of judicial bias.  Like in this case, none of the

---

3    Maria interprets Richard's claim of judicial bias under "California law" as applying section 170.1.  If so, he is raising section 170.1 for the first time on appeal and has thus forfeited the claim under this statute.  (See *People v. Peoples* (2016) 62 Cal.4th 718, 785–787 (*Peoples*) [defendant forfeited the issue on appeal by failing to file a writ from a denial of a disqualification motion under § 170.1, subd. (a)(6)(A)(iii)]  Regardless, such forfeiture of this statutory claim does not preclude us from reviewing a claim under the due process clause of both federal and state constitutions.  (See *Peoples,* at p. 787.)

parties in *Catchpole* invoked judicial bias or disqualification during trial. (See *id*. at p. 244.) The appellate court used section 170.1 and relevant case law to determine the standard for whether a case should be remanded so it could be reheard by a new judge. (*Catchpole, supra*, at pp. 244–247.)

In *Catchpole*, the trial judge repeatedly expressed impatience and contempt for sexual harassment cases during an eight-day trial. (*Catchpole, supra*, 36 Cal.App.4th at p. 243.) When an expert described symptoms of rape trauma, he belittled her testimony. (*Id*. at pp. 252–253.) He referred to the trial as "nonsense." (*Ibid*.) He badgered the plaintiff, who was 18 at the time of the assault by her then-employer, about why she had not been more resistant. (*Id*. at pp. 253–258.) In *People v. Freeman* (2010) 47 Cal.4th 993 (*Freeman*), the Supreme Court explained the judicial conduct in *Catchpole* made a fair trial impossible and demonstrated actual bias. (*Freeman,* at p.1006, fn. 4.)

Richard's reliance on *Catchpole* is misplaced because the court showed no actual bias in his case. The court "carefully observed the parties while testifying and listened closely to their testimony." It made credibility findings based on whose recitation of the facts was more detailed and consistent. It quoted from and applied the relevant law. The family court took judicial notice of the restraining order when noting with whom the dog currently resided. Such a finding was relevant to the ownership question, mentioned briefly in the ruling, and made within the court's discretion. If Richard disagreed with the restraining order, or felt it was a pretext to cover up an affair, or a ploy to influence court proceedings, his remedy was to appeal the restraining order directly. Disagreeing with a party's contention is not judicial bias. (See *Schmidt, supra*, 44 Cal.App.5th at p. 589.) The

11

record does not reflect a probability of actual bias, or even an objective appearance of bias.

## DISPOSITION

The judgment is affirmed.  Costs are awarded to Maria.


McCONNELL, P. J.

WE CONCUR:


BUCHANAN, J.


RUBIN, J.